741 So.2d 690 (1999)
Martin J. CENAC, Jr., Wild Well Control, Inc., Blowout Tools, Inc. and Patrick J. Campbell, Plaintiffs-Appellees,
v.
Peggy Jean HART, Defendant-Appellant.
No. 98-01679
Court of Appeal of Louisiana, Third Circuit.
April 7, 1999.
*691 D.S. Fitzgerald, Jr., Lafayette, for Martin J. Cenac, Jr.
Robert Lane Cole, Lafayette, for Peggy Jean Hart.
G. Tim Alexander, III, Lafayette, for Blowout Tools, Inc., et al.
John M. McCollam, James Louis Weiss, New Orleans for Wild Well Control, Inc.
BEFORE: DOUCET, C.J., SAUNDERS AND SULLIVAN, JUDGES.
SAUNDERS, Judge.
The two errors set forth by the appellant are first, that the trial court erred in granting appellees' exception based on La. R.S. 10:8-319, Louisiana's former statute of frauds, and second, that the trial court erred in dismissing appellant's claim of detrimental reliance. The appellees set forth a claim of error based on the trial court's dismissal of appellees' exception of no right or cause of action based upon illegal or illicit consideration.

FACTS
On May 18, 1985, Martin J. Cenac, III (hereinafter Cenac) and Peggy Jean Hart (hereinafter Hart) were married. On April 30, 1985, Hart signed a marriage contract allegedly after a promise of half of Cenac's interest in stock of Blowout Tools, Inc. (hereinafter BTI). BTI is an oil services corporation incorporated in Texas in 1984. It is alleged that Cenac, at the time of incorporation of BTI, was granted an equal share of stock with all other founding members. This marriage contract waived any community property claims either might have against each other through the marriage. Cenac was to put all of the BTI stock in Hart's name, so as to allegedly protect his assets from his creditors and ex-wife. On May 17, 1985, Cenac had Hart sign a counter letter stating that half of the stock belonged to Cenac, even though the stock was in Hart's name. The counter letter was witnessed and notarized. The stock was not transferred to Hart's name during the course of the marriage which ended in 1993. Cenac filed for divorce, and Hart sued for half of the BTI stock as promised by Cenac. Cenac denied ownership of any stock in BTI. Hart filed for enforcement of the oral contract and in the alternative for detrimental reliance. BTI and Patrick J. Campbell (hereinafter Mr. Campbell) were added by supplemental pleading and amended petition. Mr. Campbell was the sole stockholder of BTI according to corporate papers. BTI and Mr. Campbell then filed peremptory exceptions of no right or cause of action. The court upheld these exceptions and allowed Hart additional time to file an amended petition. Upon filing of the amended petition, BTI and Mr. Campbell again filed peremptory exceptions and added an exception of prescription. The trial court dismissed Hart's petition on the prescription exception. The court left the exception of no cause or right of action and motion for summary judgement unaddressed. On appeal, this court remanded the matter to the trial court, finding BTI and Mr. Campbell had not proven prescription.
BTI was purchased by Wild Well Control, Inc. (hereinafter Wild Well) in 1991. Hart, due to the Wild Well acquisition of BTI, claimed she had an interest in Wild Well. On December 4, 1997, Hart filed her third supplemental and amending petition. This added Wild Well as a defendant. Wild Well filed a peremptory exception of no cause or right of action and a declinatory exception of lack of jurisdiction over the subject matter. The trial judge took up *692 the appellees' motion for summary judgment and the exceptions of no right or cause of action and lack of subject matter jurisdiction. The trial court denied the no right or cause of action exception based on illegal or illicit consideration. The trial court further denied the lack of subject matter exception and denied the request of Mr. Campbell and BTI for summary judgment. The trial court did grant a no cause of action exception dismissing the case against all parties on the basis of noncompliance with La.R.S. 10:8-319 and granted the no cause of action exception as relates to the detrimental reliance claim against Cenac. Appellant now appeals the no cause of action exceptions granted by the trial court while appellees appeal only the denial of their no cause of action exception based on illegal or illicit consideration.

ANALYSIS
The first assigned error is centered on the trial court's interpretation and application of La.R.S. 10:8-319. which states:
A contract for the sale of securities is not enforceable by way of action or defense unless:
(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;
(b) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment;
(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or
(d) the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.
The lower court, in granting its exception, relied on Morris v. Friedman, 94-2808 (La.11/27/95); 663 So.2d 19. In Morris, the former bank president sued for enforcement of a contract that required the bank to buy back his stock upon resignation. There was a separate allegation that one of the bank directors had also orally agreed to purchase the stock upon the president's resignation. The plaintiff sued in the alternative for detrimental reliance. The trial court dismissed the claims based on exceptions of no cause of action and summary judgment. On appeal to this court, the exceptions and summary judgment were upheld with the exclusion of plaintiff's claims for breach of contract against the bank and holding company and his claim of detrimental reliance against the bank, holding company and Friedman, which were remanded for trial. Prior to trial, the bank became insolvent and a receiver was appointed by the Federal Deposit Insurance Corporation. A default judgment was entered in plaintiff's favor against the bank and the holding company was voluntarily dismissed as a defendant. The trial proceeded against Friedman on detrimental reliance. The jury found all questions of fact in favor of the plaintiff on the basis of the trial court judge's instructions as to the requirements of proving detrimental reliance based on LSA-C.C. art. 1967. The trial court then relied on the findings of the jury and ruled for the plaintiff based on La.Civ.Code. art. 1967. On appeal to this court, the judgment was affirmed with an adjustment of *693 the date from which interest would be calculated. The case went to the Louisiana supreme court which reversed. The Supreme Court reversal was based on the fact that La.Civ.Code. art. 1967 did not take effect until January 1, 1985. The events on which this case was based had taken place before January 1, 1985. The supreme court in examining past cases of detrimental reliance found that the promises in question had been onerous promises and as such did not have the same statutory requirement of a writing as did a gratuitous promise. See, e.g., Sanders v. United Distributors, 405 So.2d 536 (La.App. 4 Cir. 1981), writ denied, 410 So.2d 1130 (La. 1982). The supreme court distinguished those past cases by noting that at the time of those cases there was no statutory requirement of a writing for an onerous promise. In Morris, the supreme court stated:
However, none of these cases involved the application of detrimental reliance where there was the additional consideration of a statutorily required writing requirement for the promise or agreement at issue to be enforceable, and we have been unable to locate any Louisiana case squarely presenting that issue. We are confident, however, that had such a situation been encountered, plaintiffs detrimental reliance on an onerous promise not made in the statutorily required form would have been held, as in the case of a gratuitous promise which did not meet the form requirements, entirely unenforceable, even to the extent of plaintiffs reliance interest. This is so because there is no logical distinction between the courts' absolute unwillingness to enforce a gratuitous promise not made in the required form and the enforcement of an onerous promise not made in the required form. In both cases, a positive legal form requirement has been imposed by legislation, and it has long been the rule that equity will not lie where a positive legal requirement, not adhered to, exists. See, e.g., Palermo Land Company v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 488 (La.1990) (`Equitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law.'); Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75, 77-78 (1945).
Morris, 663 So.2d at 25.
There was a statutory requirement of a writing created by La.R.S. 10:8-319. The Supreme Court held that La.R.S. 10:8-319 was applicable at the time of these events and it created a statutory requirement that in order for an onerous promise to be valid, it must conform to the requirements of La.R.S. 10:8-319. The Supreme Court stated: "Under the applicable law, that existing prior to the effective date of La. Civ.Code. art. 1967, we hold that there can be no recovery on the basis of equity where, as in the instant case, a positive statutory writing requirement, not adhered to, exists." Morris, 663 So.2d at 26.
The trial court relied on Morris to support its decision granting the no cause of action exceptions since there could be neither a valid contract nor detrimental reliance without compliance with La.R.S. 10:8-319. The trial court's decision is only partially correct. The trial court was correct in applying La.R.S. 10:8-319 to BTI, Mr. Campbell, and Wild Well. The events, which the suit against these three parties arose out of, occurred in 1984 when BTI was first incorporated. At that time La. R.S. 10:8-319 was still the applicable law and failure by Cenac to comply with the requirements of La.R.S. 10:8-319 would make any claim to stock in BTI unenforceable as established in Morris. Hart asserts that the counter letter satisfies the writing requirement of La.R.S. 10:8-319 and as such the trial court's grant of the exception of no cause of action is in error. Hart further asserts that Cenac was receiving the BTI stock as payment for his experience and contacts in the field such that the exception contained in La.R.S. *694 10:8-319(b) would negate the need for a writing.
The exception of no cause of action tests the legal sufficiency of a petition by determining whether the law provides a legal remedy to the factual allegations, taken as true, that arise on the face of the petition. Everything on Wheels Subaru, Inc., 616 So.2d at 1234. Upon review of a sustained exception of no cause of action, the reviewer "should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition." City of New Orleans v. Board of Comm'rs, 93-0690 (La.7/5/94); 640 So.2d 237, 253. In the case sub judice, there is no showing that the trial court was clearly wrong in finding that the counter letter does not meet the requirements of La.R.S. 10:8-319(a). The counter letter is signed by Cenac and Hart, but not by "the party against whom enforcement is sought", in this case BTI, as is required by the statute. Nor was there any showing that the trial court was clearly wrong in deciding that Cenac's experience and contacts did not constitute payment for stock by past services as encompassed in La. R.S. 10:8-319(b). Hart's second supplemental amending petition contained in the record states that Cenac would contribute his experience and contacts as his contribution for his share of stock in BTI. This is a pledge of future services for which he was to receive stock and not a statement of past services for which payment is due. Hart's claim to the stock is derived from Cenac's alleged ownership of the stock. In order for Hart to receive the stock, Cenac must have had a valid claim to the stock. Since La.R.S. 10:8-319 was applicable at the founding of BTI, any claim of Cenac, toward ownership of BTI stock, is invalid without compliance with the statute. The trial court's decision that the counter letter between Hart and Cenac and Cenac's alleged services do not fulfill the statutory requirements of La.R.S. 10:8-319 is based on "the factual allegations, taken as true, that arise on the face of the petition." Everything on Wheels Subaru, Inc., 616 So.2d at 1234. The trial court's determination that La.R.S. 10:8-319 barred Cenac from any claim to stock in BTI pretermits any discussion of Hart's other assertions that La.R.S. 10:8-319 does not apply to the oral contract between Hart and Cenac. Since Cenac was not legally entitled to the BTI stock at the time of the formation of the oral contract with Hart, there could not be a valid contract, and as such there is no cause of action in contract against either BTI, Mr. Campbell, Wild Well or Cenac.
As to the claim of detrimental reliance against BTI, Mr. Campbell, and Wild Well, since La.R.S. 10:8-319 was applicable at the time of the formation of BTI, "plaintiff's detrimental reliance on an onerous promise not made in the statutorily required form would have been held, as in the case of a gratuitous promise which did not meet the form requirements, entirely unenforceable, even to the extent of plaintiffs reliance interest." Morris, 663 So.2d at 25.
The trial court incorrectly used Morris in deciding that La.R.S. 10:8-319 applied to Hart's detrimental reliance claim against Cenac. The events regarding Cenac's alleged acquisition of BTI stock occurred in 1984 and fell under La.R.S. 10:8-319. The oral contract between Hart and Cenac allegedly occurred in 1985, after La.Civ.Code. art. 1967 took effect. La.Civ. Code. art. 1967 states:
Cause is the reason why a party obligates himself. A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
*695 This statute removes the requirement of a writing in relation to an onerous promise in a detrimental reliance case. This court has recently spoken on this in Dugas v. Guillory, 97-398 (La.App. 3 Cir. 10/7/98); 719 So.2d 719. In Dugas, plaintiffs brought a suit for enforcement of an oral contract calling for the defendant to transfer 65% of the stock in the company to the plaintiffs for their services to the company. They brought suit for specific performance and in the alternative damages. The trial judge dismissed the specific performance suit due to a lack of a written stock transfer agreement but allowed suit for damages limited to detrimental reliance. The jury found in favor of the plaintiffs and the defendant appealed. In his appeal, the defendant relied on La.R.S. 10:8-319 and the Morris v. Friedman decision. The defendant argued that the Morris decision controlled and that there could be no valid claim of detrimental reliance in a sale or transfer of stock without a writing, as mandated by La.R.S. 10:8-319. This court rejected the defendant's assertion that Morris was binding. This court distinguished Dugas from Morris by noting that the events in Morris took place before La.Civ.Code. art. 1967 took effect such that La.R.S. 10:8-319 was still the applicable law. The events in Dugas took place after La.Civ.Code. art. 1967 became effective. This court noted:
The court decided Morris under the law existing prior to January 1, 1985, in which a claim for detrimental reliance would lie only where a writing is required by statute for the enforcement of the promise upon which the claim is based. Since the factual circumstances of the present suit arose after the 1985 enactment of La.Civ.Code art. 1967, we find that La.Civ.Code art. 1967 is the applicable law governing this suit.
This court in Dugas, noted: "[u]nder La. Civ.Code art. 1967, the only requirements necessary to maintain a detrimental reliance claim are the existence of a promise and an individual's reasonable reliance thereon that promise to his detriment." Dugas, 719 So.2d at 725. This court then decided "[u]nder La.Civ.Code art. 1967 and the given circumstances of this suit, the plaintiffs reliance on the defendant's oral promise, though not executed in written form, was reasonable because the promise was onerous in nature." Id. at 725.
In the present case, the trial court granted Cenac's exception of no cause of action on the detrimental reliance claim based on the Morris decision. Since it is the Dugas decision that is now controlling, the trial court erred in granting the exception of no cause or right of action. "When a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled." Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1162 (La.1988). Where an exception of no cause of action is made, evidence may not be introduced by any party to support or controvert the objection. La.Code.Civ.P. art. 931. In the present case the alleged oral promise was made by Cenac, in return for an agreement by Hart, to sign a marriage contract waiving any community property rights that Hart would normally have. In order for this oral promise to be the basis of a detrimental reliance claim, it must have been an onerous promise reasonably relied on. The definition of onerous is "[a]s used in the civil law and in the systems derived from it (French, Scotch, Spanish, Mexican), the term also means supported by, or relating to a good and valuable consideration, i.e., one which imposes a burden or charge in return for the benefit conferred." Black's Law Dictionary 1089 (6th ed.1990). In order for Hart to receive half of Cenac's supposed stock in BTI, she had to waive her community property rights in the marriage. This is an imposition of a "charge in return for the benefit conferred." In order to receive the stock (the benefit), she had to agree to and sign a marriage contract (the charge). Therefore the promise was onerous. Now the question is whether she reasonably *696 relied on the promise to her detriment. In signing the marriage contract waiving her rights to community property, Hart incurred a detriment. As to the reasonableness of her reliance, that is a matter best addressed at trial. For these reasons, the exception of no cause of action as to detrimental reliance against Cenac should not have been granted, and a trial on the merits should occur.
The defendants assert their own claim of error, stating that the trial court was wrong in not granting their exception of no cause or right of action based on illegal or illicit consideration. The trial court decided that the question of illegality is one that would require the court to go beyond the scope of the pleadings. We are in agreement with the trial court that on the face of the pleadings the exception of no cause of action cannot be granted. The issue of illegal consideration is one that should be resolved with a full showing of evidence at trial.

DECREE
For the reasons set forth above, the trial court's grant of the exception of no cause of action based on La.R.S. 10:8-319, as to Cenac, BTI, Mr. Campbell, and Wild Well Inc., on the claim of breach of contract, is affirmed. The trial court's grant of the exception of no cause of action as to Cenac, on the claim of detrimental reliance, is reversed and remanded. The trial court's decision to not grant the exception of no cause of action based on illegal or illicit consideration is affirmed. Costs of appeal to be split equally between the parties.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.