801 So.2d 1284 (2001)
Alice Cope RHOADS
v.
QUICKSILVER BROKERS, LTD. d/b/a Mercury Underwriters.
No. 01-CA-768.
Court of Appeal of Louisiana, Fifth Circuit.
December 26, 2001.
Rehearing Denied January 14, 2002.
*1285 William W. Hall, Metairie, LA, Attorney for Defendant-Appellant, Quicksilver Brokers, Ltd., d/b/a Mercury Underwriters.
Aaron F. Broussard, Kenner, LA, Court-Appointed Liquidator for Defendant-Appellant, Quicksilver Brokers, Ltd., d/b/a Mercury Underwriters.
Jerome M. Volk, Jr., DeMartini, D'Aquila & Volk, Kenner, LA, Attorney for Liquidator for Defendant-Appellant, Quicksilver Brokers, Ltd., d/b/a Mercury Underwriters.
Gerard G. Metzger, New Orleans, LA, Michael F. Somoza, Gretna, LA, Attorneys for Plaintiff-Appellee, Alice Cope Rhoads.
Court composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
In this suit for enforcement of a stock option agreement, the defendant corporation appeals a summary judgment against it in favor of the plaintiff that allows the plaintiff to purchase shares of stock in the company. We reverse the summary judgment and remand.
On appeal, the defendant contends the trial court erred in granting summary judgment because the option contract is unenforceable based on error as to cause, legal impediments, and lack of consideration.
The plaintiff has answered the appeal, contending the judgment should be amended to reflect the fact that the corporation is in liquidation and that the judicial liquidator should be substituted as the proper party defendant in the judgment. She also seeks damages and attorney's fees for frivolous appeal.

FACTS
The problems in this case arose because some of the persons involved in the defendant *1286 corporation, Quicksilver Brokers, Ltd., had previously been connected with insurance companies that were investigated for insurance fraud by the state insurance commissioner and the federal government. As a result, Quicksilver had difficulty obtaining a license to sell the type of insurance for which it was set up.
Quicksilver Brokers, Ltd. was incorporated in September 1992 as an excess and surplus line insurance brokerage. The initial shareholders and their respective ownership interests were William T. Odom, Jr.35% common stock, Alice Cope Rhoads35% common stock, Gerald D. "Jerry" Cunningham20% common stock, and Maurice F. Egan10% common stock. The initial capitalization was by Alice Rhoads and her husband, Fred Rhoads, who each invested $20,000.00 in preferred shares on October 21, 1992. Alice Rhoads and Fred Rhoads had executed a separation of their community property in September 1992.
The first officers of the corporation were William Odom, president; Maurice Egan, vice president; and Gerald Cunningham, secretary/treasurer. The members of the initial board of directors included all the above officers, as well as Alice Rhoads.
The company applied for a surplus lines broker's license in September 1992, but ran into problems in getting approval from the Louisiana Commissioner of Insurance. The reason was that Fred Rhoads and Eva Odom (wife of William Odom), who were Quicksilver employees, had formerly worked for other insurance companies that were under investigation for insurance fraud.
The Insurance Commissioner's office investigated Quicksilver's capitalization sources and its structure in order to establish that the company had not been formed as a front for someone who was the target of a criminal investigation. Although the Insurance Commissioner's investigator eventually recommended that the license be issued, the licensing process was halted again when Fred Rhoads became the target of a federal criminal investigation.
In December 1992, executives of the company informed Fred and Alice Rhoads that the office of the Louisiana Commissioner of Insurance had notified Quicksilver that no license would be issued if Fred Rhoads or Alice Rhoads were officers or directors of the company. Quicksilver also claimed that the Insurance Commissioner's office had stated that any existing surplus lines broker's license would be canceled should Fred Rhoads be convicted of any criminal act in connection with his association with Pelican State Mutual Insurance Company or should either he or his wife again become shareholders, officers or directors of Quicksilver.
Accordingly, Quicksilver and the Rhoadses agreed that the Rhoadses would surrender their interests in the company, that Alice Rhoads would resign as a director, and that Fred Rhoads would resign as an employee until he was cleared or exonerated.
Quicksilver redeemed Alice Rhoads' common stock in the company at the price she had paid for itfive cents per share, or $175.00 total. Fred Rhoads' attorney drafted a Stock Option and Repurchase Agreement that gave Alice Rhoads an option to repurchase her common stock. Under the terms of the agreement, dated December 28, 1992, she was granted an option for a period of five years from the date of the agreement to purchase 3,500 shares of no par value common stock at a price of five cents per share, for a total price of $175.00 (her original cost). The agreement further provided that the stock, upon being issued to her, was to equal 35% of the authorized, issued and outstanding *1287 no par value common stock of the corporation.
Contemporaneously with Quicksilver's redemption of Alice Rhoads' common and preferred shares of Quicksilver, Alice Rhoads purchased 2,000 of 4,000 shares of preferred stock in Cunningham Investments, Inc. for $10.00 per share ($20,000.00 total) and Cunningham Investments immediately purchased for the same price 2,000 non-convertible preferred shares in Quicksilver.
On September 22, 1993, Fred Rhoads pleaded guilty to one count of mail fraud and was sentenced to serve 26 months, followed by a three-year period of supervised release, and to pay restitution in the amount of $50,000.00 to the Louisiana Insurance Guaranty Association.
The stock in Cunningham Investments later was purchased by Odom Investments, a company owned by William and Eva Odom. In November 1994, Odom Investment's preferred shares in Quicksilver were redeemed and at the same time Alice Rhoads' preferred shares in Odom Investments also were redeemed.
On December 27, 1994, Alice Rhoads notified Quicksilver of her intention to exercise the stock option. Under the agreement, the closing of the stock purchase was to have taken place no later than five working days after the date of the mailing of the notice of the exercise of the option.
However, the company refused to comply with her request. An attorney for the company wrote to her, informing her that she had to file a Biographical Affidavit [Form BIO(1) ] and a financial statement with the Commissioner of Insurance and obtain approval from him before the stock could be issued. Alice Rhoads contended that state law did not require those actions and demanded that defendant issue the stock to her. Defendant refused to do so, resulting in the instant lawsuit, filed on February 2, 1995.
On August 31, 1995, Odom Investments purchased the assets of Quicksilver. Odom was controlled by William T. Odom, Jr. and Eva Odom. The sale left Quicksilver a shell company, without assets and not engaged in any business. Plaintiff contends the transfer occurred as a direct result of the denial of defendant's exceptions to this lawsuit and "of the likelihood that the Stock Option in favor of Mrs. Rhoads would be enforced."
In her petition in this suit, Alice Rhoads sought to enforce the stock option agreement, seeking specific performance of the option to purchase and an award of attorney's fees on the basis of bad faith breach of the agreement.
In its answer, Quicksilver admitted that it had received plaintiff's letter seeking to exercise her stock option, but denied plaintiff's allegations and asserted a reconventional demand against plaintiff and a third party demand against Fred Rhoads.[1] In affirmative defense, defendant asserted that the Stock Option and Purchase Agreement is a nullity, that Quicksilver is entitled to rescission of the agreement, and that Quicksilver's consent to the agreement is vitiated by error and by insufficient consideration.
Quicksilver alleged that in the representations made to Quicksilver to induce it to execute the stock option agreement, Fred Rhoads and Alice Rhoads assured defendant that Fred Rhoads had not engaged in *1288 any criminal activity in the course of his employment and association with Pelican and that Fred Rhoads would be exonerated of all charges. Quicksilver asserted that the parties "did not intend and it was understood and was so represented to defendant" that the stock option agreement would not be exercised if Fred Rhoads either was found guilty of or pleaded guilty to a criminal charge in connection with Pelican.
Quicksilver asserted further that plaintiff had failed and refused to comply with the requirements of the Louisiana Commissioner of Insurance of completion and submission of a biographical affidavit and a complete financial statement, as well as with the requirements of the corporation's articles of incorporation and bylaws, such that the company is precluded from issuance of any stock to plaintiff until she fulfills the above requirements.
After several years of discovery and disposal of various motions and exceptions, plaintiff moved for a summary judgment against Quicksilver. Plaintiff asserted she had satisfied the burden of proof to make a prima facie showing that she was entitled to judgment on her principal demand for specific performance. In addition, she asserted she had established that there is an absence of factual support for the elements essential to the defenses raised by the defendant.
Specifically, plaintiff asserted that the only issues of fact and law in dispute concerned the affirmative defenses raised by the defendant in its answer.
Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B). A fact is material for purposes of summary judgment if it is essential to a claim or defense under applicable substantive law Johnson v. Drury, 99-608 (La.App. 5 Cir. 6/2/00), 763 So.2d 103, 108. Thus, despite the presence of a disputed fact, summary judgment is appropriate if the disputed fact presents no legal issue. Id. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La.C.C.P. arts. 966 and 967.
Quicksilver asserts the trial court erred in granting a summary judgment ordering specific performance of a stock option agreement where contested issues of material fact and credibility determinations must be resolved to determine the validity and enforceability of the contract.
Quicksilver contends the option contract is unenforceable based on error as to cause, legal impediments, and lack of consideration. We address these issues as framed by appellant:

1. Disputed facts as to the "cause" of the contract preclude summary judgment.

Appellant contends the sole reason it entered into the Stock Option and Purchase Agreement was to give plaintiff an opportunity to repurchase her stock when her husband was found innocent of the criminal charges brought against him, while dissociating itself from the Rhoadses during the criminal investigation of Fred Rhoads. Quicksilver asserts,
If plaintiff agrees that this was the cause of the contract, then she is not *1289 entitled to exercise her stock option because Fred Rhoads pled guilty and was convicted of a federal felony. If plaintiff disagrees that this was the cause of the contract, then she is not entitled to summary judgment because there is a contested issue of material fact.
This is a contested issue of fact; the question is whether it is material and, thus, sufficient to preclude summary judgment.
Plaintiff contends the "cause" argument is simply defendant's attempt to impose a suspensive condition on plaintiffs right to exercise her option, so that defendant seeks to orally modify the terms of the stock option agreement. Plaintiff points out that, at the time the stock option agreement was confected, Louisiana had a Statute of Frauds regarding securities that stated a contract for the sale of securities was not enforceable unless it was in writing. La.R.S. 10:8-319 (Repealed).
In Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 26, the Louisiana Supreme Court held that a claim of equitable estoppel or detrimental reliance will not lie when the law requires the contract to be in writing: "[T]here can be no recovery on the basis of equity where, as in the instant case, a positive statutory writing requirement, not adhered to, exists." The Morris court noted, however, that the facts in the case occurred in 1984, prior to the effective date of La.C.C. art. 1967, which states:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
La.C.C. art.1967, enacted by Acts 1984, No. 331, § 1, effective January 1, 1985.
In Dugas v. Guillory, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 726, in which former employees of a company brought action against the principal for breach of an oral promise to transfer 65% of the company's stock to the employees, the court held that under La.C.C. art.1967 and the given circumstances of the suit, the plaintiffs' reliance on the defendant's oral promise, although not executed in written form, was reasonable because the promise was onerous in nature.
As explained in Dugas and in Cenac v. Hart, 98-01679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690, 695, the 1985 enactment of La. C.C. art.1967 was controlling over the Statute of Frauds. In fact, several years later La.R.S. 10:8-319 was repealed and was replaced by La.R.S. 10:8-311, which is completely its opposite. Titled, "Statute of frauds inapplicable," it states,
A contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making.
La.R.S. 10:8-311, enacted by Acts 1995, No. 884, § 1, eff. Jan. 1, 1996.
"The definition of onerous is `[a]s used in the civil law and in the systems derived from it (French, Scotch, Spanish, Mexican), the term also means supported by, or relating to a good and valuable consideration, i.e., one which imposes a burden or charge in return for the benefit conferred.'" Cenac, 741 So.2d at 695.
Certainly, the deposition testimony and affidavits offered in support of and in opposition *1290 to the motion for summary judgment show there are conflicting stories as to the understanding of the various parties involved in Quicksilver about the purpose of and reason for executing the stock option agreement. Those conflicts show there are issues of fact material to the contract. The conflicts require a factfinder to make credibility determinations and findings of fact, both of which are inappropriate for summary judgment.
Further, as a panel of this Court noted in Figueroa Intern., Inc. v. Touby,
[The plaintiff] must prove that the stock meets the requirements of La.R.S. 10:8-102. That provision requires that the security must be of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment to be a "certificated" security and of a type commonly dealt in on securities exchanges or markets to be an uncertificated security. R.S. 10:8-102(1)(a)(ii) and (1)(b)(ii). The court cannot take cognisance of matters which may or may not be well known in the world of securities. Without evidence of whether the stocks meet the criteria, it cannot impose the requirements of the statute. Consequently, we find that evidence that the stock falls within the ambit of R.S. 10:8-102 must be produced by the party seeking to utilize the benefits of the statute.
Neither the documentation produced by Figueroa in support of its motion for summary judgment nor the record discloses any evidence of whether the stock at issue meets the requirements of R.S. 10:8-102. Thus we reverse the summary judgment on this basis, as well.
623 So.2d 1354, 1357 (La.App. 5 Cir.1993).

2. Error as to the cause of the contract vitiated consent.

La.C.C. art.1949 states, "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." Quicksilver states that its consent to the stock option agreement is vitiated based on Fred Rhoads' fraudulent misrepresentations of his innocence.
In support of its argument on this issue, appellant cites La.C.C. art.1950, which provides:
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
Appellant refers to Comment (d) under the Revision Comments1984, which states, "Under this Article, relief may be obtained when, intending to contract with a certain person or a person of a certain quality or character, a party has given his consent to a contract with a different person, or with a person who lacks the intended quality or character. If the contract is gratuitous, the presumption obtains that the person of the intended obligee was the reason why the obligor bound himself." Appellant asserts it relied on Fred Rhoads' assurances that he could not possibly be convicted and that error directly impacted the cause for Quicksilver to enter the contract.

3. The "implied understanding" is the cause of the contract.

Quicksilver asserts the original intent or cause of the stock option agreement was to allow Alice Roads to repurchase her stock after her husband was found innocent.

*1291 4. The legal requirements were imposed by the Insurance Commissioner.

Quicksilver asserts when after it received Alice Rhoads' demand for stock under the option agreement, William and Eva Odom did not embark on their own legal research. They simply telephoned the executive at the Office of the Commissioner of Insurance (Winston Riddick), who had walked them through the licensing process. They feared that exercise of the option by Alice Rhoades would be a problem and their fears met reality. The deputy insurance commissioner with whom they dealt (Riddick) expressed displeasure at the idea and indicated that Quicksilver could lose its license.

5. Mrs. Rhoads did not pay adequate consideration for her option.

Appellant contends that Alice Rhoads' agreement to permit redemption of her common stock was not consideration for the stock option agreement, but rather was a requirement for the nest. She had paid $175 for all her shares.
Appellant asserts there was no alternative to having the company redeem her stock; based on the understanding the Odoms had from their contacts with the Insurance Commissioner's Office, it was a condition for a surplus line license to be issued. If plaintiff had refused to let the company redeem her shares, the company would not have received the surplus lines license, it would have lost business, and the Rhoadses would have lost their $40,000 investment in the preferred stock.
The voluminous documentary evidence provided by plaintiff in conjunction with her motion for summary judgment itself establishes the many factual disputes between the parties. One of the disputes most frequently cited by the parties is the discrepancy between the testimony of Winston Riddick, deputy insurance commissioner at the time Quicksilver was seeking its surplus lines license, and the testimony of Eva Odom. Riddick stated that he would not have required Alice Rhoads to divest herself of her stock ownership, particularly if he had known she was separate in property from her husband. Eva Odom, on the other hand, testified that she was advised, in meetings with Riddick and a member of his staff, that neither Fred Rhoads nor Alice Rhoads could be officers, director or shareholders in order for Quicksilver to qualify for an insurance license.
Similarly, the opposing camps have vigorously disputed whether it was "understood" among them that exercise of the stock option buy-back by Alice Rhoads was conditioned on the absolution of Fred Rhoads of any culpability in the criminal investigation he underwent. The parties' pleadings and supporting documents arguing these two issues alone fill many pages of the record.
We find both these matters are material to determination of this case and, unquestionably, both are disputed, vigorously disputed. It is plain that these are matters that must be decided in the trial process rather than by summary judgment.
With respect to plaintiff's Answer to the Appeal, we find merit to her request regarding substitution of parties. Specifically, plaintiff complains that the Judicial Liquidator for the defendant corporation has failed to formally substitute himself as defendant, as required by law. La.C.C.P. arts. 802-804.
La.C.C.P. art. 821 provides that the substitution of parties in an action pending in the supreme court or in a court of appeal is governed by the rules of the appellate court. U.R.C.A. Rule 2-9 provides that the rules and procedures for substitution of parties provided by La.C.C.P. Arts. *1292 801-807 shall regulate the substitution of parties.
Prior to the lodging of this appeal, plaintiff filed a motion in the district court to have the Judicial Liquidator for Quicksilver Brokers, Ltd. appear and substitute himself as legal successor of Quicksilver.[2] The Judicial Liquidator thereafter appeared in open court in subsequent proceedings and has signed Quicksilver's pleadings and briefs. Although the Judicial Liquidator never made a formal motion to be substituted as a legal successor for the corporation, we deem his submission to the jurisdiction of the court sufficient to permit us to order that he be substituted in place of the corporation, as follows:
IT IS ORDERED that Aaron Broussard, duly appointed Judicial Liquidator for Quicksilver Brokers, Ltd. d/b/a Mercury Underwriters, be substituted in place of the aforesaid Quicksilver Brokers, Ltd. d/b/a Mercury Underwriters, and that henceforth defendant be referred to in these proceedings as "Quicksilver Brokers, Ltd. d/b/a Mercury Underwriters, by and through its duly appointed Judicial Liquidator, Aaron Broussard."
For the foregoing reasons, the summary judgment is REVERSED and the matter is remanded to the district court, subject to the above order regarding the substitution of parties.
Costs of this appeal are assessed against the appellee.
REVERSED AND REMANDED WITH ORDER.
NOTES
[1] In its reconventional and third party demand, Quicksilver asserted it had sustained damage by the acts and omissions of the Rhoadses and that it was entitled to damages and attorney's fees from them. The defendant voluntarily dismissed the reconventional and third party demand, however, in August 1998.
[2] La.C.C.P. art. 740 provides that the receiver or liquidator of a domestic corporation is the proper defendant in an action to enforce an obligation of the corporation.