986 So.2d 103 (2008)
JOHN W. STONE OIL DISTRIBUTOR, L.L.C.
v.
RIVER OAKS CONTRACTORS & DEVELOPERS, INC., Amelia Homes, L.L.C., J.J. Gretna, L.L.C., Thomas Ward, Jason Ward, and T. Jerard Ward.
No. 07-CA-1001.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*104 George J. Fowler, III, Robert R. Johnston, Anthony D'Alto II, Fowler Rodriguez, New Orleans, Louisiana, for Plaintiff/Appellant, John W. Stone Oil Distributor, L.L.C.
Daniel A. Ranson, Michael D. Peytavin, Gaudry, Ranson, Higgins & Gremillion, L.L.C., Gretna, Louisiana, for Defendants/Appellees, River Oaks Contractors and Developers, Inc. and Thomas J. Ward, Jr.
Omer F. Kuebel, III, Monique M. Lafontaine, Locke Lord Bissell & Liddell LLP, New Orleans, Louisiana, for Defendants/Appellees, Amelia Homes, LLC, J.J. Gretna, LLC, Jason Ward, T. Jerard Ward and JJ Condominiums, LLC.
*105 Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
The plaintiff has appealed the trial court's grant of summary judgment in favor of the defendants. For the reasons that follow, we affirm.

FACTS:
Plaintiff, John W. Stone Oil Distributor, L.L.C. (hereinafter referred to as Stone), filed suit against T. Jerard Ward, Jason Ward, J.J. Gretna, L.L.C., Amelia Homes, L.L.C., Thomas "Butch" Ward, and River Oaks Contractors & Developers, Inc. seeking damages for breach of an alleged agreement to sell certain immovable property to Stone. Specifically, Stone alleged that its company was interested in purchasing a parcel of land located near its facilities for future growth of the company. This parcel of land, referred to in these proceedings as Parcel A, fronts on the Mississippi River and is bound on the south side by First Street. Stone alleges that the defendants wanted to purchase the adjacent parcels of land referred to in these proceedings as Parcels B and C. Stone alleges an agreement was entered into whereby defendants would purchase the land in its entirety and then sell Parcel A to Stone. Stone contends that it relied on this agreement and representations made by defendants and did not negotiate to buy the land. Stone then discovered that defendants had changed their mind about transferring Parcel A to Stone, instead planning to build a condominium development on this land. Stone sought damages under theories of detrimental reliance, breach of a fiduciary duty by its partner in the joint venture to acquire Parcel A, fraud, and unfair trade practice. Stone contends that because defendants failed to transfer Parcel A as agreed, it was necessary to procure a lease on another parcel of land causing financial damages as a result of increased costs.
With regard to the detrimental reliance claim, Stone alleged that the parties agreed that it was best for only one party to approach the previous owner and negotiate a sale in order to obtain the land for the lowest price. Stone alleges that it was agreed that defendants would purchase the land then transfer Parcel A to Stone. Stone contends its detrimental reliance on the promises made by defendants caused Stone to sustain monetary damages. With regard to the fraud claim, Stone alleges a joint venture was formed for the purpose of acquiring the land and accordingly, defendants owed a fiduciary duty to Stone. Stone contends defendants breached this fiduciary duty in failing to transfer Parcel A after agreeing to do so. Stone alleges that it suffered monetary damages as a result of defendants' breach of this fiduciary duty. With regard to the fraud claim, Stone alleges defendants committed fraud by approaching Stone with the intent of deceiving Stone so defendants could purchase the land at a lower price. Stone alleges it is entitled to monetary damages for increased costs it incurred as a result of defendants' alleged fraud. As to the claim of unfair trade practices, Stone alleges defendants committed unfair trade practices when they employed unfair methods of competition and deceptive acts and practices in the process of purchasing the land and used deceitful acts and misrepresentation to keep Stone out of negotiations regarding the purchase of the land. Stone alleges it and defendants were competitors within the meaning of R.S. 51:1404, the Louisiana Unfair Trade Practices and Consumer Protection Act (herein after LUTPA). Again Stone contends it is entitled to monetary damages for increased costs it incurred as a *106 result of defendants' alleged unfair trade practices.
The defendants responded with various exceptions including an Exception of No Cause of Action. The trial court denied these exceptions[1] and discovery was conducted. Thereafter, defendants filed Motions for Summary Judgment. Following a hearing, the trial court granted defendants' motions.

LAW AND DISCUSSION:
Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). For purposes of summary judgment, a fact is material if it is essential to a claim or defense under applicable substantive law. Johnson v. Drury, 99-608 (La.App. 5 Cir. 6/2/00), 763 So.2d 103. Thus, regardless of the presence of a disputed fact, summary judgment is appropriate if the disputed fact presents no legal issue. Id. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967.
Although defendants filed separate Motions for Summary Judgment and separate judgments were signed granting summary judgment, the main arguments made by defendants are the same, i.e. that an alleged oral agreement to sell immovable property is not actionable under fraud, breach of fiduciary duty or tort theories of recovery. Defendants contend that agreements, such as an option to purchase or a contract to sell, that establish a transfer or an obligation to transfer immovable property must be in writing. Defendants argue that framing arguments using allegations of fraud, detrimental reliance, and other torts all based on an alleged oral agreement are nothing more than an attempt to circumvent the longstanding rule that written agreements are required to sell immovable property.
Plaintiff relies on three cases to support its position that a written agreement is not required to support its claims. We find these cases distinguishable. In Rhoads v. Quicksilver Brokers, Ltd., 01-768 (La.App. 5 Cir. 12/26/01), 801 So.2d 1284, plaintiff sought to enforce a written stock option agreement. A claim of detrimental reliance was not asserted. Likewise, Cenac v. Hart, 98-1679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690, involved an alleged agreement regarding the transfer of stock. In Cenac, the Third Circuit reversed the trial court's grant of an Exception of No Cause of Action regarding plaintiffs detrimental reliance on an alleged oral agreement to transfer stock. Even in Cenac, which involved an alleged agreement to transfer of stock and an Exception of No Cause of Action, the alleged oral agreement was accompanied by a written marriage contract, therefore, we find it is not persuasive in the instant case. The third case, Dugas v. Guillory, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, also involved an alleged oral promise to transfer stock and is similarly not persuasive because it did *107 not involve immovable property and there was some written evidence introduced to support plaintiffs' claims.
We find cases involving an oral promise to transfer immovable property to be persuasive given the facts and circumstances of the case at bar. In Ogden v. Ogden, 93-1413 (La.App. 3 Cir. 9/21/94), 643 So.2d 245, the court held that an alleged joint venturer could not maintain an action against a second joint venturer for breach of an oral joint venture agreement relating to immovable property even if the claim sounded in tort rather than contract. In reaching this conclusion, the court relied on Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963), a case with nearly identical facts to those in Ogden. In Hayes, the alleged joint venturers entered into an oral agreement to purchase a mineral lease. The lease was acquired in the name of only one of the venturers and was later sold for a profit. The plaintiffs filed suit to recover a share of profits realized from the sale of this mineral lease. The Hayes court noted that in order to recover, plaintiffs had to prove the existence of a contract between them and the defendant to purchase the mineral lease for the benefit of all three. Since there was no written contract, the only evidence available to plaintiffs was oral. The plaintiffs in Hayes argued that they were permitted to use parol evidence to prove the existence of this contract since title to the lease would not be affected. The Hayes court rejected this contention finding that parol evidence cannot be used to prove a contract when litigants sought to gain benefits out of a verbal agreement relating to the sale of immovable property. The Hayes court further relied on Patterson v. Bloss, 4 La. 374 (La.1832), to hold that a party seeking to collect damages for the failure to execute a contract to sell real property must prove the existence of the contract in the same manner as if he sought specific performance of the contract. The Ogden court went on to state:
Few concepts are as firmly rooted in our statutory law and jurisprudence as the principle that agreements as to immovable property must be in writing. To allow litigants to avoid this principle merely by framing their cause of action in terms of a tort would be jurisprudentially eradicating a concept as old as the Civil Code itself.

Ogden, supra at 248.
In his deposition, John Stone, Jr., the president of Stone, admitted that no written agreement ever existed for the sale of Parcel A to Stone. A review of Stone's petitions make it clear that all causes of action asserted are based on the existence of an oral agreement to sell the property. Since Stone cannot introduce parol evidence to show any agreement to sell the property or to form a joint venture between Stone and any defendant to purchase the property and no written evidence exist to support the existence of an agreement, Stone cannot carry his burden of proof at trial. Thus, the defendants have shown there is an absence of proof for one or more of the allegations essential to plaintiffs claim of fraud and breach of fiduciary duty.
Stone further argues that it can succeed on a claim for detrimental reliance under Civil Code Article 1967 based on an oral contract to sell Parcel A. La. C.C. art. 1967 provides:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages *108 suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable. (Emphasis added.)
Stone argues that the promise to transfer Parcel A was not a gratuitous promise. Rather, Stone argues that its agreement to refrain from attempting to purchase the property was given as good and valuable consideration in exchange for defendants' promise to transfer Parcel A to Stone, thereby making the promise an onerous promise. We find the distinction as to whether the promise was gratuitous or onerous to be irrelevant given the fact that the alleged promise was one to sell immovable property. "Equity will not lie where a positive legal requirement, not adhered to, exists." Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19.
Stone further argues in drafting Civil Code Article 1967, the legislature could have excluded actions involving reliance on agreements to sell immovable property.
We disagree with Stone's position. Civil Code Article 1914 defines nominate contracts as those given a special designation such as a sale. Civil Code Article 1916 provides that nominate contracts are subject to special rules of the respective titles when those rules modify, complement or depart from the rules of conventional obligations or contracts. Civil Code Article 2440 states that a promise of a sale of immovable property must be made by authentic act or act under private signature, unless the property has been delivered and the transferor recognizes the transfer when interrogated under oath.
The interpretation of a statute starts with the language of the statute itself. Louisiana Municipal Asso. v. State, XXXX-XXXX (La.1/19/05), 893 So.2d 809. Thus, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. Louisiana Municipal Asso. v. State, supra. The Supreme Court explained that a statute must be "applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it." Id. quoting Sultana Corp. v. Jewelers Mut. Ins. Co., XXXX-XXXX pp. 3, 4 (La.12/3/03), 860 So.2d 1112, 1116.
With these principles in mind, we find that since Civil Code Article 1916 states that nominate contracts have special rules, Civil Code Article 1914 defines a sale as a nominal contract, Civil Code Article 2440 states that a promise of sale of an immovable must be in writing, and Civil Code Article 1967 states reliance on a gratuitous promise made without required formalities is not reasonable, Stone cannot prevail on a detrimental reliance claim based on an alleged breach of an oral contract to sell immovable property. Clearly, the law requires that agreements to sell immovable property be in writing and we reject Stone's contention that he relied on an onerous, rather than gratuitous promise, making the statutorily required writing formality unnecessary to prove his claim[2]. *109 While we recognize that there are issues of fact as to what, if any, promises were allegedly made to Stone, Stone cannot come forth with evidence sufficient to carry its burden of proof at trial because Stone cannot prove a written contract to sell Parcel A to Stone. Additionally, we find that it is not reasonable for a sophisticated businessman such as Mr. Stone to rely on an oral contract to sell immovable property given the firmly rooted statutory law and jurisprudence requiring such agreements to be in writing. Thus, defendants are entitled to judgment as a matter of law with regard to Stone's claim of detrimental reliance.
Furthermore, a valid contract of sale requires three things: (1) the thing, (2) the price, and (3) the consent of the parties. La. C.C. art. 2439. A contract of sale requires the price to be fixed in either a sum certain or to be determined by a method agreed to the parties of the sale. La. C.C. art. 2464. In the case at bar, there was no evidence that the parties had agreed upon a price. Thus, even if we were to agree with Stone's position that there can be an oral agreement to sell immovable property, Stone has not come forth with any evidence that there was an agreement as to the price, an essential element of a contract of sale.
Stone also asserts an allegation under LUTPA. A right of action exists under LUTPA only for consumers or business competitors. Vermilion Hosp. Inc. v. Patout, 05-82 (La.App. 3 Cir. 6/8/05), 906 So.2d 688. Stone contends it was a competitor of defendants with respect to the acquisition of Parcel A. Thus, in order to recover under LUTPA, Stone must establish that it engages in business that competes directly or indirectly with the defendants as a business competitor. Id. John Stone, Jr. testified that Stone is engaged in the distribution of oil products to maritime and industrial users. Defendants are real estate developers and managers. Stone has presented no evidence to show it was a business competitor of defendants under LUTPA. Accordingly, defendants are entitled to summary judgment because Stone has not shown that it will be able to carry its burden of proving that it is a business competitor of defendants and can recover a claim asserted under LUTPA.
Additionally, Stone cannot establish that Thomas "Butch" Ward made any promises to Stone regarding the property. The evidence submitted indicates that it was Jason Ward who spoke to Mr. Stone about the property and that the property was purchased by J.J. Gretna, L.L.C. of which Thomas Ward had no ownership. There was no evidence submitted that River Oaks Contractors & Developers, Inc. was involved in the acquisition of the property.

CONCLUSION:
The law regarding summary judgment is clear: If the moving party points out an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the non-moving party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden at trial; failure to do so results in no genuine issue of material fact and the proper granting of summary judgment. Smith v. General Motors Corp., 31,258 (La.App. 2d Cir.12/9/98), 722 So.2d 348. Plaintiffs have not come forth *110 with any evidence that they will be able to satisfy their evidentiary burden at trial, i.e. competent evidence of a written agreement to purchase Parcel A and/or that Stone was a business competitor of defendants. In the absence of this evidence, defendants are entitled to summary judgment as a matter of law. Accordingly, the judgments of the trial court are affirmed.
AFFIRMED.
NOTES
[1] Defendant's Exception of Vagueness and Ambiguity was granted and plaintiff amended its petition to cure this exception.
[2] Further we reject Stone's contention that the alleged promise was onerous rather than gratuitous. John Stone, Jr. testified that the land in question had been for sale for some time prior to there being any discussion between Stone and the defendant regarding its purchase. The evidence indicates that Stone did not put up any money or take any action in any negotiations for the purchase of the land. Rather, the facts seem to indicate that Stone wanted defendants to purchase the property so Stone could acquire Parcel A at a lesser price than if it had attempted to purchase the property from the original owner.