59 So.2d 130

**DUCOTE v. ODEN.**

No. 40342.

April 28, 1952.

Polk & Culpepper, Alexandria, for plaintiff-appellant.

Stafford & Pitts and Grove Stafford, all of Alexandria, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, Roy J. Ducote, instituted suit for damages for breach of contract, and for cause of action alleges that during September, 1948, he and the defendant, J. J. Oden, entered into a verbal contract whereby plaintiff was employed by defendant to remove the overburden of dirt from defendant's gravel pit near Kinder, Louisiana, for the price of 22¢ per cubic yard, the term of said employment to be for a period of not less than three years—this term being a material and primary consideration, without which plaintiff would not have contracted; that in order to comply with his obligations, plaintiff made heavy expenditures in the purchase of necessary equipment and work was commenced under the contract on November 9, 1948; that this work continued until May 26, 1949, at which time the defendant, without cause or reason and in violation of their agreement, declared the contract to be terminated. Plaintiff claims damages of $82,108.43, based on an estimated profit for the remainder of the term in amount of $73,700, plus the cost and expense of moving machinery to the defendant's pit and preparing it to do the work, amounting to $8,408.43.

Answering, the defendant denied that the plaintiff was employed for any fixed period, averring that the agreement between the parties was entirely indefinite as to time and consisted simply of an understanding whereby the plaintiff, for a stated price, was to remove overburden in a manner satisfactory to the defendant so as to permit the latter to properly operate his gravel pit; that the plaintiff was not obligated to remove all or any specified part of the overburden and was free to leave at any time; that almost from the start the plaintiff failed to operate in a satisfactory manner, as a result of which defendant was unable to mine his gravel to meet commitments. Defendant denied, however, that the plaintiff was discharged, his version being that the plaintiff left the job because he realized he had undertaken to perform the work at a price so low he would only become more

deeply immersed in debt the longer he continued to operate.

From the judgment of the lower court rejecting plaintiff's demands and dismissing his suit, he prosecutes this appeal.

The gravel deposit on which defendant was conducting his mining operations extended over some 90 acres and was covered with an overburden of clay soil averaging 30 feet in depth. The gravel was mined from an open pit by use of a suction dredge which could operate only after the dirt had been removed by a drag line and hauled away in wagons. It appears from a study and analysis of the record that the agreement between the parties was the result of conversations, the first having taken place during September, 1948, near Kinder, at which time the discussion centered around whether plaintiff was interested in the job and the machinery which would be required for the operation, no mention being made of price. Since plaintiff had not sufficient equipment he enlisted the interest of Mr. Charles M. Waters, Jr., a businessman of Alexandria, and sought to borrow the necessary capital from him to purchase additional machines, with the arrangement that Waters was to receive 50% of the profit

Waters desired to verify the information given him by plaintiff before committing himself, and a meeting was had for this purpose in the office of defendant at Woodworth, at which defendant, plaintiff and Waters were present. It was Waters who led the conversation, and upon an estimate that all present indebtedness on the equipment plus that to be incurred could be paid off in three years, Waters asked if the defendant would enter into a written contract. This the defendant agreed to do, saying however that "somebody would have to guarantee their end of it," he would guarantee his. After discussing this phase for a few minutes, Waters decided not to press his request for the contract and the matter was dropped. A price was agreed upon, plaintiff moved his machinery on location and began operations in early November, 1948. In addition to his own equipment he at first used some belonging to the defendant, and subsequently purchased equipment and consolidated previous debts with money advanced by Waters, totaling $26,800. Weekly payments for his work were computed on the amount of dirt removed, and this arrangement continued without interruption except for periods of bad weather or equipment failure until May 19, 1949, on which date occurred a breakdown of the drag line necessitating major repairs, and the agreement between the parties was terminated.

In support of his claim that the contract was for a term of three years, plaintiff places great reliance on what appears to have been a casual remark allegedly made by defendant during their original discussion, to the effect that "you will have approximately three years' work on this pit"—at a time when there was no certainty

that plaintiff would undertake the work or could make financial arrangements, and before there had been discussion of the price. He also testified that he had "an impression" that the job was to last for three years since the dirt had to be removed before defendant could operate his gravel pit and that length of time would be required to complete removal of over burden from the whole acreage. It is significant that on the last day of his employment he made no protest of a violation of contract, saying only: "If I don't have a job now any more, I need the money and you can pay me now." As a whole his testimony is weak and inconclusive, and Waters, who furnished all the cash to finance plaintiff in this undertaking, stated unequivocally that at the last meeting there was no agreement with reference to a definite period of time. There would be no profit now in further summarizing the facts; the conclusion reached by the district court is inescapable. The plaintiff has failed to establish the contract on which he relies.

Obviously, counsel for the plaintiff recognized this fact because he is now invoking a so-called "promissory estoppel," arguing that the promise and representation made by defendant to plaintiff that the engagement between them was to be for a period of three years was a promise which defendant should reasonably expect to induce action or forbearance of a definite and substantial character on the part of plaintiff; that defendant intended that such representation should be relied upon; that plain-tiff did rely on the promise and incurred expenses; and that a refusal to enforce the promise or representation would result in injustice to plaintiff.

Such a theory is unknown to our law, and counsel has not attempted to show its applicability under the provisions of the Civil Code, by which we are bound in suits of this type. Under the facts of the case, however, there is a total absence of proof by which plaintiff can recover on any theory of estoppel. The record is bare of evidence, other than plaintiff's unsupported assertion, that the representation was made, and even he places the conversation in the early stages of discussion; nor is there proof that action followed on the faith of the representation, if given. It is therefore clear that this contention has no merit.

For the reasons assigned, the judgment is affirmed.