663 So.2d 19 (1995)
Huey P. MORRIS and Susie T. Morris
v.
Sam J. FRIEDMAN.
No. 94-C-2808.
Supreme Court of Louisiana.
November 27, 1995.
Rehearing Denied January 26, 1996.
*20 Gail Nick Wise, Mack E. Barham, Julia Caroline Symon, Barham & Arceneaux, New Orleans; Billy Ray Pesnell, Hargrove, Pesnell & Wyatt, Shreveport; Donald G. Kelly, *21 Jeffrey H. Thomas, Kelly, Townsend & Thompson, Natchitoches, for Applicant.
Mary Olive Pierson, Baton Rouge, Clevland, Barrios, Kingsdorf & Casteix; Carl W. Cleveland, New Orleans, for Respondent.
KIMBALL, Justice.[*]

FACTS AND PROCEDURAL HISTORY
In 1984, Huey P. Morris, the president of the First National Bank of Mansfield, Louisiana, was recruited by Sam Friedman, the majority stockholder of People's Bank & Trust Company ("People's Bank") of Natchitoches, Louisiana, to become president and chief executive officer of People's Bank. After several meetings between Friedman, on behalf of People's Bank, and Morris, involving negotiations as to the terms, conditions, and proposed duration of Morris' employment and Friedman's plans for People's Bank, Morris agreed to serve as president and chief executive officer of People's Bank for a three year period. At Morris' insistence, the agreement was reduced to writing in the form of a written employment contract drafted by an attorney, Kenneth D. McCoy, who had been retained by Friedman on behalf of People's Bank. After Morris received a draft of the proposed contract which contained a provision obligating Morris to sell any stock he acquired in People's Bank back to the bank or its designees upon his departure, he requested an additional provision be inserted in the contract which made his agreement to sell his stock back to the bank also binding on the bank. In other words, the final form of the contract, in addition to providing for Morris' purchase of an unspecified number of shares of stock in the bank, also contained a provision which obligated Morris to sell, and People's Bank to repurchase, any shares held by Morris at the time of the termination or expiration of the employment agreement, at a price determined by a formula contained in the written contract.[1] According to the testimony adduced at trial, this provision, as well as the other provisions of the contract concerning compensation, duration of employment, and other related issues, reflected the agreements reached between Friedman, on behalf of People's Bank, and Morris in their negotiations.
In addition, Morris later claimed that Friedman also made personal promises, at the time of his negotiation on behalf of People's Bank of the employment agreement with Morris, to repurchase in his individual capacity any stock which Morris purchased. These alleged promises, which form the basis of the claim at issue in the instant case, were not, however, reduced to writing, and have been consistently denied by Friedman.
Morris' initial purchase of stock in the bank occurred in August, 1984. Shortly thereafter, a bank holding company, People's Bancshares of Natchitoches, Inc. ("Bancshares"), was formed to hold all of the stock of People's Bank. In addition to his duties as president and chief executive officer of People's Bank, Morris also served as president and chief executive officer of Bancshares. The stockholders of People's Bank, including Morris, received stock in Bancshares in exchange for People's Bank stock when Bancshares was formed. During the course of his employment, Morris purchased over $400,000.00 worth of stock in People's Bank and, after it was formed, Bancshares. In 1987, at the expiration of his employment agreement, Morris declared his intent to resign from both People's Bank and Bancshares, and offered his stock to Friedman, the People's Bank and/or Bancshares for repurchase under the terms of Friedman's alleged oral promise and/or his employment agreement with People's Bank.[2] Negotiations between Friedman and Morris ensued for the repurchase of the stock by Friedman *22 in his personal capacity. When the negotiations failed to produce a sale of the stock from Morris to Friedman, Morris, in April, 1988, tendered a letter of resignation to People's Bank and Bancshares in which he asked that arrangements be made for the purchase of his stock in Bancshares in accordance with the terms of his employment contract. People's Bank, believing such a purchase would violate La.R.S. 6:416, refused to honor its agreement with Morris for the repurchase of the stock.[3]
In 1989, Morris filed suit for specific performance of the employment contract and damages against People's Bank, Bancshares, certain directors of People's Bank and Bancshares, including Sam J. Friedman, the majority stockholder of both People's Bank and Bancshares, and Kenneth D. McCoy, Jr., the attorney retained by People's Bank to draft the employment contract between People's Bank and Morris. In the petition, Morris alleged claims of breach of contract, violations of Louisiana securities laws, negligent misrepresentation, and detrimental reliance against People's Bank, Bancshares, certain directors of People's Bank and Bancshares, and Friedman, with additional allegations of breach of an oral contract against Friedman on the basis of the failed 1987 negotiations over the repurchase of the stock,[4] and a legal malpractice claim against attorney McCoy. Morris' claims, excepting the claims against People's Bank and Bancshares for detrimental reliance and breach of contract, and Friedman for detrimental reliance, which were remanded for trial, were disposed of through no causes of action and a summary judgment. See Morris v. People's Bank and Trust Company, 580 So.2d 1029 (La.App. 3rd Cir.), writ denied, 588 So.2d 101 (La.1991); Morris v. People's Bank and Trust Company, 580 So.2d 1037 (La.App. 3rd Cir.1991). Prior to trial of Morris' claims against People's Bank, Bancshares, and Sam Friedman on remand, People's Bank was adjudged insolvent, and the Federal Deposit Insurance Corporation was appointed as its receiver. A default judgment was entered in Morris' favor against the receiver of People's Bank in the amount of $749,123.90, and Bancshares was voluntarily dismissed by Morris as a party defendant. Thereafter, the parties proceeded to trial by jury on the merits of Morris' claim of detrimental reliance against Friedman for the alleged pre-employment contract personal promises.
After specifically being instructed by the trial judge as to the requirements for proving a claim of detrimental reliance under La.C.C. art. 1967, the jury found that: (1) Friedman personally and individually promised, prior to the acquisition by Morris of any stock, to purchase any stock owned or controlled by Morris; (2) Morris reasonably relied to his detriment upon Friedman's promise; and (3) Morris sustained damages in the amount of $403,004.70. The trial judge then adopted the findings of the jury and issued judgment in plaintiffs' favor, explicitly relying on La. C.C. art. 1967.
On appeal by Friedman, the third circuit court of appeal adjusted the date from which interest on the judgment should be calculated, but otherwise affirmed the trial court judgment, explicitly relying on La.C.C. art. 1967 as the controlling law and citing the manifest error rule to sustain the jury's factual findings under that article. Morris v. People's Bank & Trust Co. of Natchitoches, No. 93-934 (La.App. 3rd Cir. 7/27/94), 642 *23 So.2d 225. This Court granted certiorari[5] to determine the correctness of the court of appeal's decision in light of the requirements of the Statute of Frauds, as contained in La.R.S. 10:8-319.[6]

APPLICABLE LAW
Both the trial court and the court of appeal expressly relied on La.C.C. art. 1967, which states:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
However, La.C.C. art. 1967 was adopted by Acts 1984, No. 331, § 1, as part of the comprehensive revision of the obligations articles in the Civil Code, and became effective on January 1, 1985. It is a well-settled rule of statutory interpretation that, absent extraordinary circumstances, see Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, cert. denied, ___ U.S. ___, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), a substantive law applies prospectively only. See La.C.C. art. 6. As this Court stated in Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La. 1992):
LSA-C.C. Art. 6 requires that we engage in a two-fold inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
In Act 331 of 1984, the legislature did not express any intent as to whether La.C.C. art. 1967 should be applied retrospectively. However, it is clear that La.C.C. art. 1967 is a substantive law, as it incorporates into the law of Louisiana a new basis for enforcement of obligations.[7] As Comments (a) and (d) of the Revision Comments to Article 1967 note:
(a) This Article is new. It changes the law in two ways. First, it defines cause in terms of "reason," rather than "motive," for the purpose of enhancing the importance of judicial discretion in characterizing an obligation as enforceable. See 1 Litvinoff, Obligations 381-382, 390-396 (1969). Second, it incorporates detrimental reliance as an additional ground for enforceability.
* * *
(d) Under this Article, a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment. That conclusion is consistent with the basic principles of C.C. Art. 1791 (1870) and C.C. Art. 2315 (1870). The case of Ducote v. Oden, 221 La. 228, 59 So.2d 130 (1952) (holding that promissory estoppel is not recognized in Louisiana) is thus overruled.
See also S. Herman, Detrimental Reliance In Louisiana LawPast, Present, and Future (?): The Code Drafter's Perspective, 58 Tul.L.Rev. 707 (1984); Comment, Detrimental Reliance, 45 La.L.Rev. 753 (1985).
Since La.C.C. art. 1967 works a substantive change in the law which cannot be applied retroactively, and the alleged promise by Friedman upon which Morris' claim is *24 based occurred prior to the effective date of La.C.C. art. 1967, both the trial court and the court of appeal committed legal error in applying Article 1967 to Morris' claim. The issue in this Court, therefore, is whether, under the law existing prior to January 1, 1985, a claim for detrimental reliance will lie where a writing is required by statute for the enforcement of the promise upon which plaintiffs' claim is based. As such, we review this completed trial record to determine whether Morris has proved his claim under the law existing prior to the enactment of La.C.C. art. 1967.

DISCUSSION
Prior to January 1, 1985, claims based on a theory of loss from change in position due to allegedly "reasonable" reliance on factual representations made by another were framed in terms of either "detrimental reliance" (despite the lack of express codal authority for such claims), "equitable estoppel," or "promissory estoppel."[8] We have reviewed the record in this case in light of the jurisprudence in all three of these areas and, for the following reasons, find that Morris' claim cannot, as a matter of law, be sustained under the law as it existed prior to the addition of La.C.C. art. 1967 to the Civil Code.
Such claims, when expressly framed in terms of detrimental reliance, were a relatively rare occurrence in Louisiana prior to the effective date of La.C.C. art. 1967.[9] Review of the few cases existing in Louisiana which discuss the concept of detrimental reliance reveals most of those cases concerned gratuitous promises which, due to their failure to conform with the form requirements for such promises, were unenforceable, but were nonetheless held by the courts to be onerous promises which could then be held to be enforceable, at least to the extent of plaintiffs' reliance interest. For example, in Louisiana College v. Keller, 10 La. 164 (1836), a case involving the promise of a gift to a university, this Court appeared to recognize that the promise was most accurately characterized as gratuitous in nature. However, the Court noted that the defendant might have expected the advantage of having a college built near his home in which to educate his children, providing an onerous basis for the enforceability of the promise. Id. at 167. See also Baptist Hospital v. Cappel, 14 La.App. 626, 129 So. 425 (2nd Cir.1930). Close examination therefore reveals that the courts deciding such cases found the promises to be onerous so that they might then be enforced, since there was no writing requirement for the promises at issue if they could be characterized as onerous, as opposed to gratuitous promises.[10]
In the remainder of the cases in which detrimental reliance was explicitly addressed, the agreements, as in the instant case, were in fact onerous. See, e.g., Sanders *25 v. United Distributors, 405 So.2d 536 (La. App. 4th Cir.1981), writ denied, 410 So.2d 1130 (La.1982). As such, the courts deciding these cases had little trouble deciding that plaintiffs' reliance interests were recognizable and compensable claims. However, none of those cases involved the application of detrimental reliance where there was the additional consideration of a statutorily required writing requirement for the promise or agreement at issue to be enforceable, and we have been unable to locate any Louisiana case squarely presenting that issue. We are confident, however, that had such a situation been encountered, plaintiff's detrimental reliance on an onerous promise not made in the statutorily required form would have been held, as in the case of a gratuitous promise which did not meet the form requirements, entirely unenforceable, even to the extent of plaintiff's reliance interest. This is so because there is no logical distinction between the courts' absolute unwillingness to enforce a gratuitous promise not made in the required form and the enforcement of an onerous promise not made in the required form. In both cases, a positive legal form requirement has been imposed by legislation, and it has long been the rule that equity will not lie where a positive legal requirement, not adhered to, exists. See, e.g., Palermo Land Company v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 488 (La.1990) ("Equitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law."); Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75, 77-78 (1945).[11] In both situations, the positive writing requirement serves the same public policy function. Morris' attempt to characterize his claim as recovery of his reliance interest (i.e., as damages), as opposed to enforcement of Friedman's alleged promise to the extent of his reliance interest (i.e., as contractual), therefore cannot be allowed. See Hayes v. Muller, 245 La. 356, 158 So.2d 191, 197 (1963) (On Rehearing); Ogden v. Ogden, 93-1413 (La.App. 3rd Cir. 9/21/94), 643 So.2d 245, writ denied, 94-2539 (La. 1/13/95), 648 So.2d 1339 (Relying on Hayes, supra, in a case where the plaintiff attempted to enforce an oral promise by defendant to pay monies arising out of an oil and gas lease, the third circuit stated: "Few concepts are as firmly rooted in our statutory law and jurisprudence as the principle that agreements as to immovable property must be in writing. To allow litigants to avoid this principle merely by framing their cause of action in terms of a tort would be jurisprudentially eradicating a concept as old as the Civil Code itself." Id. at 248.).
Analysis of Morris' claim under a theory of equitable estoppel yields the same result. This Court has defined equitable estoppel as "the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." John Bailey Contractor v. State, Dept. of Transp. & Dev., 439 So.2d 1055, 1059 (La.1983) (quoting American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967)). This Court has further held that the three elements required for application of equitable estoppel are: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. Id. at 1059-60. However, a party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. Id. at 1060. Further, estoppels are not favored in our law, and properly apply only as to representations of fact. State v. Mitchell, 337 So.2d 1186, 1188 (La.1976). This Court has further held:
`Estoppel' in its various forms seems to be a doctrine of last resort. In Louisiana, no statutory material and no body of jurisprudence justifies its use. In this court we have discussed it, in modern times, only to disallow a claim that the opponent ought *26 not to be able to make a certain claim or defense.
Howard Trucking Co., Inc. v. Stassi, 485 So.2d 915, 918 (La.1986), cert. denied, 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986). Finally, "[e]quitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law." Palermo, supra at 488; see also Mitchell, supra at 1188 ("A court can only consider received usages when there is no express law on the subject.... Since both parties were equally apprised of the actual law in this area, this is not a proper case for the invocation of the doctrine of equitable estoppel."); La.C.C. art. 4.[12]
In the instant case, Morris proved, at least to the satisfaction of the jury, that Friedman made a promise to repurchase the stock, that he justifiably relied on that promise, and that he changed position to his detriment on the basis of his reliance on Friedman's promise. However, Morris did not prove that Friedman made any representations whatsoever to the effect that his promise need not be in writing to be enforceableindeed, it appears from the testimony adduced at trial that neither party had any idea that such a promise need be reduced to writing to be enforceable.[13] The law, in the form of La.R.S. 10:8-319 was, however, equally accessible both parties.[14] As such, a claim of equitable estoppel will not lie in the instant case. As was the case with claims based on detrimental reliance prior to the adoption of La.C.C. art. 1967, see supra, "[e]quitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law." Palermo, supra at 488.
Finally, prior to the enactment of La.C.C. art. 1967, the common law theory of promissory estoppel had been expressly rejected by this Court. Ducote v. Oden, 221 La. 228, 59 So.2d 130 (1952). There is, therefore, no need to discuss the merits of Morris' claim under such a theory.

CONCLUSION
The lower courts erred in this case in applying La.C.C. art. 1967 to Morris' claim. Under the applicable law, that existing prior to the effective date of La.C.C. art. 1967, we hold that there can be no recovery on the basis of equity where, as in the instant case, a positive statutory writing requirement, not adhered to, exists. As such, the opinion of the court of appeal is reversed.
DECREE REVERSED.
WATSON, J., concurs and assigns reasons.
LEMMON, J., concurs.
LOTTINGER, J., dissents by C.D.K.
*27 WATSON, Justice, concurring.
Because R.S. 10:8-319, the statute of frauds, provides that a securities sale contract is only enforceable when there is a writing, I respectfully concur in the result reached by the majority.
NOTES
[*] Judge Morris A. Lottinger, Chief Judge, Court of Appeal, First Circuit, sitting by assignment in place of Justice James L. Dennis. Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] Due to the inclusion of the stock repurchase provision in the contract, Susie T. Morris, Huey Morris' wife, also signed the employment contract, and is a named plaintiff in the instant case. For purposes of convenience, the Morris' will be referred to in the singular as "Morris" in this opinion.
[2] According to Morris' testimony at trial, Friedman's promise for repurchase of the stock was supposed to be on the same terms as People's Bank's agreement to repurchase as it was contained in the written employment contract.
[3] La.R.S. 6:416 prohibits a bank from purchasing or owning its own stock. People's Bank's reliance on this statute as a defense to Morris' claim for breach of contract was subsequently disallowed by the third circuit, as Morris' stock was in Bancshares, not People's Bank. See Morris v. People's Bank & Trust Co., 580 So.2d 1029, 1034-35 (La.App. 3rd Cir.), writ denied, 588 So.2d 101 (La.1991). La.R.S. 6:416 was thereafter amended by Acts 1991, No. 371, § 1, to include a prohibition against a bank purchasing or owning stock in its parent company.
[4] Morris' breach of contract claim against Friedman concerning the 1987 oral promises for the repurchase of the stock was disposed of in the trial court by summary judgment in Friedman's favor, and affirmed on appeal. See Morris v. People's Bank & Trust Co., 580 So.2d 1029 (La. App. 3rd Cir.1991). Morris expressly declined to offer evidence of any detrimental reliance at trial on remand as to the alleged 1987 promises by Friedman to repurchase the stock, and did not raise the claim in the court of appeal.
[5] Morris v. People's Bank & Trust Co. of Natchitoches, 94-2808 (La. 3/17/95), 651 So.2d 256.
[6] La.R.S. 10:8-319(a), the only section of the statute relevant to the instant case, states:

A contract for the sale of securities is not enforceable by way of action or defense unless:
(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;....
[7] This fact was noted by the Third Circuit in the first Morris decision, Morris v. People's Bank & Trust Co., 580 So.2d 1029, 1033 (La.App. 3rd Cir.), writ denied, 588 So.2d 101 (La.1991) ("La. C.C. art. 1967 changed Louisiana law by incorporating detrimental reliance as a basis for enforceability of obligations.").
[8] Additionally, we note that while much has been written in law review articles about the Roman law maxim venire contra propium factum (no one can contradict his own act) and the German legal theory of culpa in contrahendo (fault in contracting), see, e.g., M. Mattar, Promissory Estoppel: Common Law Wine In Civil Law Bottles, 4 Tul.Civ.L.Forum 72 (1988); S. Herman, Detrimental Reliance In Louisiana LawPast, Present, and Future (?): The Code Drafter's Perspective, 58 Tul.L.Rev. 707 (1984); Comment, Detrimental Reliance, 45 La.L.Rev. 753 (1985), we can find only a few Louisiana decisions which even mention these doctrines, and only one case which specifically based recovery exclusively on either theory. See Davilla v. Jones, 418 So.2d 724 (La.App. 4th Cir.1982), rev'd. 436 So.2d 507 (La. 1983). We have not located any case or commentary even addressing the application of either doctrine to an onerous promise where a positive legal requirement of form exists.
[9] See articles cited supra, note 8.
[10] As Professor Mattar, examining the experiences of French, German, and Louisiana courts explains:

In the previous cases of charitable subscriptions, where a fund to support families of combatants was created, a church bell tower constructed, a crematorium built, and a college and a nursing home were established, courts felt that it was only just and equitable to enforce the informal gratuitous promises that induced actions of reliance. Bound by the formality requirements of various civil codes, however, the courts either had to interpret the gratuitous contracts as onerous or to probe deep into the purpose of the gifts to negate their liberality.
M. Mattar, Promissory Estoppel: Common Law Wine In Civil Law Bottles, 4 Tul.Civ.L.Forum 71, 99 (1988).
[11] The addition of La.C.C. art. 1967 in the Civil Code as an additional ground for enforceability of obligations may well alter this analysis. However, since this case is decided under the law existing prior to the effective date of La.C.C. art. 1967, we need not decide, and express no opinion herein, whether the existence of La.C.C. art. 1967 would yield a different result under the facts presented in this case were it applicable.
[12] La.C.C. art. 4 states:

When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages. (Emphasis added). See also Jones v. Hospital Corp. of America, 516
So.2d 1175, 1177 (La.App. 2nd Cir.1987):
Thus, a pacte de preference is a type of contract to sell. As we have previously noted, such a contract must be in writing to be enforceable, therefore, estoppel will obviously not lie to prove the pacte de preference or right of first refusala type of contract to sell. Plaintiff's contention that he should have the opportunity to pursue this claim by way of estoppel is thus in error.
[13] We note, however, that Morris' contemporaneous agreement with People's Bank to repurchase his stock was reduced to writing at Huey Morris' insistence. Why Morris believed it was necessary to reduce such an agreement to writing to render it effective against People's Bank, but did not believe it necessary to reduce the same agreement to writing to render it effective against Friedman remains unexplained.
[14] The existence of La.R.S. 10:8-319 as part of the law of Louisiana in effect at the time of Friedman's alleged promise also points out the suspect nature of the jury's factual finding that Morris "justifiably relied" on Friedman's purported promise. Absent fraud, or at least affirmative misrepresentations as to the necessity of a writing, see, e.g., Pittman v. Pomeroy, 552 So.2d 983 (La.App. 2nd Cir.1989), it is almost always the case that it will be unreasonable to rely on an oral promise where the law requires such a promise to be in writing to be enforceable. The jury's failure to so find might, in part, be based on the fact that they too were unaware of the existence of a writing requirement for promises of the type at issue herein, as the trial court failed, over objection by Friedman, to instruct the jury as to the existence of the statutory writing requirement.