WHIPPLE, J.
 

 | sThis matter is before us on appeal by plaintiffs from the trial court’s grant of summary judgment in favor of various defendants, dismissing plaintiffs’ claims against those defendants, and denying plaintiffs leave to file a second supplemental and amended petition naming the United States of America as defendant. For the following reasons, we affirm in part, reverse in part, and remand.
 

 FACTS AND PROCEDURAL HISTORY
 

 By Credit Deed dated December 19, 1997, plaintiff East Tangipahoa Development Co., L.L.C. (“East Tangipahoa Development”) conveyed to defendants David Scott Sandage and Harold H. Perrilloux an undivided
 
 68%
 
 interest in an approximately 527-acre tract of land in Tangipahoa Parish for the purpose of the development of a golf course community. The purchase price set forth in the credit deed was $500,000.00, with East Tangipahoa Development to immediately receive $100,000.00,
 
 *241
 
 with the remaining $400,000.00 to be paid as evidenced by a promissory note. Pursuant to the credit deed, the promissory note was payable upon the fulfillment of certain conditions, including commencement of construction of a golf course (to be developed on the remaining 32% undivided interest of the tract of land), approval of financing, and “[ajpproval of wetlands determination by Corps of Engineers.”
 
 [1]
 

 On that same date, the parties also executed an agreement (hereinafter referred to as the “Development Agreement”) whereby Sandage and Perrilloux, designated as developers, and East Tangipahoa Development | ¿agreed, as additional consideration, to a division of the proceeds from the future sale of “lots” within the development.
 
 [2]
 

 Thereafter, in November of 2001, Sand-age and Perrilloux transferred their contractual rights under the Credit Deed and the Development Agreement to Bedico Junction, L.L.C., through its managing members, Don Ayres and Wayne Glascock. The Credit Deed and the Development Agreement were then amended on November 16, 2001, by East Tangipahoa Development and Bedico Junction, to replace Sandage and Perrilloux, as vendees, purchasers, and/or developers, with Bedico Junction and to provide for certain changes with regard to the payment of additional consideration by Bedico Junction to East Tangipahoa Development, including payment of the additional sum of $150,000.00, and cancellation of the promissory note. The November 16, 2001 “Amendment to Development Agreement” also provided as follows:
 

 14. Developer shall have 24 months from the date of this Agreement to obtain all necessary licenses, permits, or other approval from all required State and Federal agencies including without limitation, Wetland’s permit from the U.S. Corp. of Engineers, in order to proceed with the Project as defined in this Agreement. At the termination of the 24th month extending from the date of this Agreement, or upon receipt of written notice from Developers delivered to Seller that Developers are unable to obtain all required licenses or permits to proceed with the Project, whichever occurs first, and provided said 24 month period is not extended by Agreement between Seller and Developer, Seller shall have 180 days from said date to re-purchase the property purchased by Developers from Seller in that certain Amended Credit Deed, and the repurchase price to be paid by Seller to Developers shall be determined as follows:
 

 a). Initial $100,000.00 paid to Seller at the time of the original Credit Deed.
 

 b). $150,000.00 cash paid by Developer to Seller at the time of the execution of the Amended Credit Deed dated November 16, 2001.
 

 |fic). Return to Developer of all Development Costs as defined in the Development Agreement including without limitation, all expert and consulting fees, attorney’s fees (“not related to litigation by and between the parties,”) interest expense, and any and all other out-of-pocket expense incurred by Developer
 
 *242
 
 from the original purchase of the property from Seller through the date of repurchase of the property by Seller from Developers in accordance with this Agreement.
 

 15. Should Seller fail to execute the right of re-purchase within the 180 day period provided herein, all rights, limitations and all provisions of the Credit Deed as amended and Development Agreement as amended shall terminate with no surviving rights or causes of action granted to any party herein. No disagreement or dispute between Seller and Developer as to the legitimacy of “Development Costs” to be paid by Seller to Developer shall be cause for an extension of the 90 day [sic] re-purchase period, but said amount in dispute shall be es-crowed and the parties agree to Mediate or if necessary, Arbitrate the resolution of the disputed Development Costs.
 

 (Emphasis added).
 

 Bedico Junction did not secure all the necessary licenses and permits within the twenty-four-month permit period following the November 16, 2001 execution of the Amendment to Development Agreement. Thereafter, by letter dated October 21, 2005, East Tangipahoa Development made demand upon Bedico Junction to exercise its right to repurchase the tract of land.
 

 When Bedico Junction did not acquiesce in the repurchase of the tract of land, East Tangipahoa Development and Byard Edwards, Jr., as a principal of East Tangipa-hoa Development, instituted this suit against Bedico Junction, Glascock, Ayres, and Perrilloux, claiming rights of ownership to the property, seeking to exercise the option to reacquire the property, and seeking damages for the failure of the defendants to develop the property, breach of contract, and alleged attempts to defraud East | (¡Tangipahoa Development.
 
 [3]
 
 In their petition, plaintiffs averred that the Amendment to Development Agreement specifically provided that the twenty-four-month permit period for obtaining licenses and permits could be extended, that extensions had been granted, and that, at the time suit was filed, the agreement was subject to such an extension.
 

 In response to the petition, defendants filed a motion for summary judgment, contending that East Tangipahoa Development had not timely sought to repurchase the property during the 180-day period following Bedico Junction’s failure to obtain all necessary licenses and permits in the twenty-four-month permit period provided for in the Amendment to Development Agreement. Defendants further averred that the parties had not executed a written document extending the 180-day term for repurchase, a document which the law required to be in writing as affecting immovable property, and, thus, that East Tangipahoa Development had no remaining ownership rights in the property and no remaining rights under the contracts between the parties. Accordingly, defendants contended that they were entitled to judgment in their favor as a matter of law, dismissing plaintiffs’ claims of ownership to the property and for damages.
 

 In opposition to the motion, plaintiffs averred that in May and June of 2008, because of skepticism about Bedico Junction’s progress, East Tangipahoa Develop
 
 *243
 
 ment began efforts to repurchase the property, but that after meeting with Per-rilloux and Glascock, Edwards, on behalf of East Tangipahoa Development, orally granted Bedico Junction “an open ended extension of time” of the twenty-four-month permit period (“the oral | .¡extension agreement”). Thus, plaintiffs contended that the 180-day period for exercising the repurchase option had never started to run.
 

 Following a hearing on the motion, the trial court granted the defendants’ motion for summary judgment and dismissed with prejudice plaintiffs’ claims against defendants. In reasons for judgment, the trial court concluded that any alleged oral agreement to extend the twenty-four-month period that triggered the running of the repurchase-option period was invalid in that an agreement pertaining to title to immovable property must be in writing. The judgment also denied plaintiffs leave of court to file a Second Supplemental and Amended Petition, naming the United States of America as a defendant. From this judgment, plaintiffs appeal, listing six assignments of error.
 

 BURDEN OF PROOF AND STANDARD OF REVIEW FOR SUMMARY JUDGMENT
 

 A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. LSA-C.C.P. art. 966(A)(2).
 

 The mover bears the burden of proving that he is entitled to summary judgment. LSA-C.C.P. art. 966(C)(2). However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. LSA-C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual |ssupport for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B).
 

 In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.
 
 Hines v. Garrett,
 
 2004-0806 (La.6/25/04), 876 So.2d 764, 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor.
 
 Willis v. Medders,
 
 2000-2507 (La.12/8/00), 775 So.2d 1049, 1050.
 

 In determining whether summary judgment is appropriate, appellate courts review evidence
 
 de novo
 
 under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate.
 
 See Barnett v. Watkins,
 
 2006-2442 (La.App. 1st Cir.9/19/07), 970
 
 *244
 
 So.2d 1028, 1033,
 
 writ denied,
 
 2007-2066 (La.12/14/07), 970 So.2d 537.
 

 DISCUSSION
 

 With regard to the trial court’s conclusion as to the invalidity of the oral extension agreement, plaintiffs aver in assignment of error number four that the trial court erred in determining as a matter of law that the extension agreement had to be in writing pursuant to LSA-C.C. art. 1839. | ^Additionally, through assignment of error number three, plaintiffs contend that the trial court erred in refusing to recognize the oral extension agreement as enforceable where: (1) an oral agreement was contemplated by the earlier written agreement; (2) the necessity of a writing was waived by the parties; and (3) the oral extension agreement was proven and acknowledged by the parties.
 

 Alternatively, in their second assignment of error, plaintiffs contend that the trial court erred in failing to recognize detrimental reliance as an additional ground for enforcing the oral extension agreement. In a related argument, plaintiffs assert in assignment of error number five that the trial court erred in failing to determine that East Tangipahoa Development’s repurchase option was deemed satisfied pursuant to LSA-C.C. art. 1772, in that East Tangipahoa Development’s failure to timely fulfill the repurchase option was due to the fault of Bedico Junction. Specifically, plaintiffs contend that East Tangipahoa Development did not timely repurchase the property due to its reliance on the promises of Bedico Junction (as to the oral extension agreement and the progress of the development).
 
 [4]
 

 Additionally, in their first assignment of error, plaintiffs contend that the trial court erred in dismissing their suit in its entirety where certain claims were not dependent on the validity of the extension agreement,
 
 i.e.,
 
 their claims of fraud and breach of contract based on the written agreements. Finally, in their sixth assignment of error, plaintiffs aver that the trial court erred in refusing to allow them to file a second supplemental and amended petition.
 

 |
 
 lf)Invalidity of Oral Extension Agreement
 

 (Assignments of Error Nos. 3 & 4)
 

 Agreements relating to the transfer of or option to purchase immovable property must be in wilting in a form prescribed by LSA-C.C. art. 1839.
 
 See
 
 LSA-C.C. art. 2620;
 
 Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc.,
 
 2000-1930, 2000-1931 (La.App. 1st Cir.9/28/01), 809 So.2d 1040, 1051; and
 
 Casey v. National Information Services, Inc.,
 
 2004-0207 (La.App. 1st Cir.6/10/05), 906 So.2d 710, 719 & n. 10,
 
 writ denied,
 
 2005-2210 (La.3/24/06), 925 So.2d 1325.
 

 In the instant case, plaintiffs argue that the trial court erred in concluding that the oral extension agreement had to be in writing because the agreement did not relate to the transfer or sale of, or the option to buy or sell, immovable property. Rather, they contend that the oral extension agreement related only to Bedico Junction’s obligation to develop the property and obtain necessary permits. Thus, they contend that the oral extension agreement did not have to be in writing.
 

 Such an interpretation of paragraph 14 of the Amendment to Development Agree
 
 *245
 
 ment is strained at best. Paragraph 14, read in its entirety, relates to East Tangi-pahoa Development’s right to repurchase the property upon Bedico Junction’s failure to timely obtain all necessary licenses and permits. Any attempt to separate the portion of paragraph 14 setting forth the time period in which Bedico Junction was required to obtain the licenses and permits from the portion of the paragraph setting forth the resultant time frame for exercise of the repurchase option is unworkable. Indeed, the expiration of the permit period initiates the beginning of the repurchase option period. Thus, we reject plaintiffs’ argument that any extension of the permit period, the triggering event in the contract forjjjcommencement of the option to repurchase, was not required to be in writing.
 

 Plaintiffs additionally argue that the trial court erred in finding the alleged oral extension agreement to be invalid because plaintiffs established, in opposition to the motion for summary judgment, that an oral extension to the permit period was contemplated by the written Amendment to Development Agreement, the actions of the parties evidence an intent to waive any writing requirement, and the oral extension agreement was proven and acknowledged by the parties.
 

 At the outset, we find no merit to plaintiffs’ argument that the Amendment to Development Agreement contemplated an oral extension of the permit period. Paragraph 14 of the Amendment to Development Agreement provides, in pertinent part, that “[a]t the termination of the 24th month extending from the date of this Agreement, or upon receipt of written notice from Developers delivered to Seller that Developers are unable to obtain all required licenses or permits to proceed with the Project, whichever occurs first, and provided said 24 month period is not extended by Agreement between Seller and Developer,” East Tangipahoa Development “shall have 180 days from- said date to re-purchase the property.” While plaintiffs rely on the fact that the written agreement did not specifically state that an extension of the permit period be in writing, we cannot conclude that the mere absence of the word “written” to qualify “Agreement” evidences an affirmative intent by the parties to eliminate the legal requirement of a written agreement.
 

 Nor do we find merit to plaintiffs’ arguments that the oral extension agreement should have been held to be enforceable because the actions of the parties evidenced an intent to waive the writing requirement. With |i2regard to plaintiffs’ contention that they established that both parties relied upon an oral extension agreement, we note that affidavit statements of third parties establishing that, prior to the expiration of the permit period, Edwards orally indicated to Bedico Junction that he would grant an extension and told a third party that he had agreed to an extension of the permit period likewise do not establish that a valid written extension was thereafter formally agreed upon or confected by the parties or that the parties agreed to waive or dispense with the legal formality of a writing. Additionally, plaintiffs’ suggestion that East Tangipahoa Development’s failure to repurchase the property during the 180-day period following expiration of the twenty-four-month permit period establishes that the parties relied upon an oral extension is self-serving and does not create an issue of fact as to the lack of a valid extension agreement.
 

 Accordingly, we find no error in the trial court’s conclusion that, as a matter of law, the defendants established the lack of a valid, written extension of the twenty-four-month permit period and, consequently,
 
 *246
 
 the lack of a valid extension of the 180-day repurchase option. These arguments lack merit.
 

 Detrimental Reliance
 

 (Assignments of Error Nos. 2 & 5)
 

 In assignment of error number two, plaintiffs contend that the trial court erred in failing to recognize detrimental reliance as an additional ground for enforcing the oral extension agreement. We note at the outset that plaintiffs did not set forth a claim of detrimental reliance on the alleged oral extension agreement in their petition or raise this issue in the trial court in their memoranda in opposition to defendant’s motion for summary judgment.
 

 | ^Issues not submitted to the trial court for decision will generally not be considered by the appellate court on appeal.
 
 Walston v. Lakeview Regional Medical Center,
 
 99-1920 (La.App. 1st Cir.9/22/00), 768 So.2d 238, 243-244,
 
 writ denied,
 
 2000-2936 (La.12/15/00), 777 So.2d 1229;
 
 Brown v. Automotive Casualty Insurance Company,
 
 93-2169 (La.App. 1st Cir.10/7/94), 644 So.2d 723, 732,
 
 writ denied,
 
 94-2748 (La.1/6/95), 648 So.2d 932. Accordingly, we conclude that this issue is not properly before this court.
 

 However, even assuming these arguments were preserved for appellate review, we find no error by the trial court in dismissing plaintiffs’ claims seeking enforcement of the repurchase option and/or damages relating to East Tangipahoa Development’s failure to timely exercise the option. Louisiana Civil Code article 1967, enacted by Louisiana Acts 1984, No. 331, § 1, effective January 1, 1986, legislatively established a cause of action for detrimental reliance, which had been previously recognized in Louisiana jurisprudence. Article 1967 provides as follows:
 

 Cause is the reason why a party obligates himself.
 

 A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
 

 The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. To prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. Rather, in determining whether a claim for detrimental reliance has been established, the focus is on whether the party proved three elements by 114a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance.
 
 Suire v. Lafayette City-Parish Consolidated Government,
 
 2004-1459 (La.4/12/05), 907 So.2d 37, 59.
 

 On appeal, plaintiffs contend: (1) that East Tangipahoa Development and Bedico Junction orally agreed to an extension of the permit period; (2) that because of the agreement, East Tangipahoa Development did not exercise the repurchase option; and (3) that its reliance on the oral agreement was justified. However, because we conclude that any reliance on an oral extension agreement was not justifiable, we find no merit to the argument that the trial court’s grant of summary judgment should be reversed on the basis of its failure to recognize justifiable reliance as an additional ground for enforcing the purported oral extension.
 

 
 *247
 
 In
 
 Morris v. Friedman,
 
 94-2808 (La.11/27/95), 663 So.2d 19, the Louisiana Supreme Court addressed for the first time the issue of whether a party could prevail on a claim for detrimental reliance based on an oral promise where the law required such an agreement to be in writing. Concluding that the positive legal requirement of a written contract should prevail over a claim in equity, the supreme court concluded that the claim of detrimental reliance must fail.
 
 Morris,
 
 663 So.2d at 24-25. While
 
 Morris
 
 was decided under the law as it existed prior to the enactment of LSA-C.C. art.1967, we find portions of the supreme court’s analysis helpful herein. Specifically, with regard to the issue of justifiable reliance, the supreme court held:
 

 Absent fraud, or at least affirmative misrepresentations as to the necessity of a writing,
 
 see, e.g., Pittman v. Pomeroy,
 
 552 So.2d 983 (La.App. 2nd Cir.1989), it is almost always the case that it will be unreasonable to rely on an oral promise | iBwhere the law requires such a promise to be in writing to be enforceable.
 

 Morris,
 
 663 So.2d at 26 n. 14 (Emphasis added).
 

 More recently, the Fifth Circuit Court of Appeal rejected a claim of detrimental reliance pursuant to LSA-C.C. art.1967, where the claim was based on an alleged oral agreement to sell immovable property.
 
 John W. Stone Oil Distributor, L.L.C. v. River Oaks Contractor & Developers, Inc.,
 
 07-1001 (La.App. 5th Cir.5/27/08), 986 So.2d 103, 108-109,
 
 writ denied,
 
 2008-1397 (La.9/26/08), 992 So.2d 992. In that case, the plaintiff business was interested in purchasing land for future expansion of its facilities, and the business allegedly orally agreed with defendants that defendants would purchase the entire tract of land and then sell a portion of the land to the plaintiff business. In affirming an award of summary judgment in favor of defendants, the court concluded that defendants were entitled to summary judgment dismissing plaintiffs’ claim pursuant to LSA-C.C. art.1967 because “it is not reasonable for a sophisticated businessman such as [the principal of the plaintiff business] to rely on an oral contract to sell immovable property given the firmly rooted statutory law and jurisprudence requiring such agreements to be in writing.”
 
 John W. Stone Oil Distributor, L.L.C.,
 
 986 So.2d at 105, 108-109.
 

 Similarly, in the instant case, it was not reasonable for Edwards, the principal of East Tangipahoa Development, to rely on an alleged oral agreement to extend the permit period and, consequently, the repurchase option period. The record demonstrates that Edwards was intimately involved in the project to develop this tract of land into a golf course community and, more importantly, that, in addition to being a businessman, he is an attorney.
 

 | ^Additionally, we note that plaintiffs offered no evidence in opposition to the defendants’ motion for summary judgment to establish that Bedico Junction made any representations whatsoever to East Tangi-pahoa Development dr Edwards that any extension of the permit period need not be in writing.
 
 See Morris,
 
 663 So.2d at 26;
 
 cf. Pittman v. Pomeroy,
 
 552 So.2d 983, 986-987 (La.App. 2nd Cir.1989). Thus, we conclude that any reliance on an oral promise or agreement affecting this tract of land was not reasonable.
 

 For the same reason, we find no merit to plaintiffs’ assertion in assignment of error number five that the trial court erred in failing to deem the repurchase provision of the Amendment to Development Agreement satisfied pursuant to LSA-C.C. art. 1772. Louisiana Civil Code article 1772 provides that “[a] condition is
 
 *248
 
 regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.” The record is devoid of any evidence that Bedi-co Junction represented to East Tangipa-hoa Development that a written amendment to the permit period and related repurchase option period was not legally required.
 

 Accordingly, we find no merit to the assertion that the trial court should have recognized the validity of the alleged oral extension agreement on the basis of detrimental reliance under LSA-C.C. art.1967 or should have concluded that the repurchase option was deem satisfied pursuant to LSA-C.C. art. 1772.
 

 Claims of Fraud and Breach of Contract
 

 (Assignment of Error No. 1)
 

 In this assignment of error, plaintiffs contend that the trial court erred in granting the motion for summary judgment and dismissing their claims in their entirety based solely on its determination that the permit period and 117resulting repurchase option period were not validly extended, given that some of plaintiffs’ claims are not based upon the oral extension agreement. Specifically, plaintiffs contend that their claims of fraud and breach of contract are not dependent upon the validity of the oral extension agreement. In them petition, plaintiffs set forth their claims of breach of contract and fraud as follows:
 

 Petitioners have no reason to believe that the defendants at any time intended to comply with the agreements between the parties, but rather at all times they engaged in a scheme to attempt to defraud petitioners and therefore breached the contract by furtively failing to go forward with them contractual duties to develop the property in a business like manner.
 

 However, the Amendment to Development Agreement does not support plaintiffs’ contention that the mere fact that defendants failed to acquire all permits in the twenty-four-month permit period would render defendants liable for breach of contract. Rather, the contract itself specifically sets forth the remedy available to East Tangipahoa Development in such an event,
 
 ie.,
 
 the timely exercise of the repurchase option. Additionally, as set forth in detail above, the evidence in opposition to summary judgment is devoid of any evidence of any actions or representations by defendants to East Tangipahoa Development to indicate that a written agreement was not legally required herein, as would support any claim of fraud on behalf of defendants. Accordingly, we find no merit to this assignment of error either.
 

 The portion of the trial court’s judgment granting defendants’ motion for summary judgment and dismissing plaintiffs’ claims against them is, therefore, affirmed.
 

 1
 
 V/Frial Court’s Refusal to Allow Filing of Second Supplemental and Amended Petition
 

 (Assignment of Error No. 6)
 

 In this assignment of error, plaintiffs contend that the trial court erred in refusing to allow them to file their second supplemental and amending petition naming the United States of America as defendant. In the pleading styled “Second Supplemental
 
 &
 
 Amended Petition for Damages,” plaintiffs named the United States of America as defendant and averred that the United States, through the United States Army Corps of Engineers (“the Corps”), was liable for prolonging the permitting process for the tract of land at issue pursuant to the Clean Water Act, and for failing to release the tract of land despite actual knowledge
 
 *249
 
 by the Corps that it lacked regulatory jurisdiction over the tract of land.
 

 In written reasons for judgment denying plaintiffs leave to file the second supplemental and amended petition, the trial court stated as follows:
 

 The Court notes that, after the hearing on this motion [for summary judgment] had been set, and one week prior to the hearing date, Plaintiffs filed a second supplemental and amended petition for damages, naming the United States of America as a defendant, based on claims involving the wetlands permitting process governed by the Corps of Engineers which they contend amounted to a taking without payment of just compensation, prohibited by the Fifth Amendment. It is noted that this pleading was filed
 
 without
 
 leave of court or written consent of the adverse party, as required by Code of Civil Procedure Article 1151.
 

 Further, the Court notes that Plaintiffs previously had filed their first supplemental and amending petition (also without leave of court) in October of 2006, naming the United States Army Corps of Engineers as a defendant in this proceeding. That action resulted in the removal of this case to the Eastern District of Louisiana (Civil Action No. 06-9256). On August 20, 2007, Judge Carl J. Barbier granted the Corps’ motion to involuntarily dismiss Plaintiffs’ claims based on a lack of waiver of sovereign immunity. According to Judge Barbier’s ruling, Plaintiffs had filed an amended petition in
 
 that
 
 Court, also seeking to establish a “taking” claim under the Fifth Amendment. That claim was likewise dismissed in Federal court on the same basis. The case was then remanded back to State court on the remaining claims.
 

 BaUnder these circumstances, this Court will deny leave to file the second supplemental and amended petition in state court, and will dismiss this suit in its entirety.
 

 In support of their contention that the trial court erred in striking their second supplemental and amended petition, plaintiffs note that LSA-C.C.P. art. 1151 provides that “[a] plaintiff may amend his petition without leave of court at any time before the answer thereto is served.” (Emphasis added). After the answer is served, a plaintiff may amend the petition only by leave of court or by written consent of the adverse party. LSA-C.C.P. art. 1151. Where leave of court is required, the decision to allow the filing of an amended pleading is within the sound discretion of the trial court.
 
 See Stockstill v. C.F. Industries, Inc.,
 
 94-2072 (La.App. 1st Cir.12/15/95), 665 So.2d 802, 810,
 
 writ denied,
 
 96-0149 (La.3/15/96), 669 So.2d 428. In the instant case, despite the protracted procedural history of this case, Bedico Junction has never filed an answer.
 

 We note that prior to the enactment of LSA-C.C.P. art. 1151, Louisiana Code of Practice article 419 provided that “after issue joined,” a plaintiff could amend his petition with leave of court. This article was interpreted to mean that prior to “joining of issue,” a plaintiff could amend his petition without leave of court.
 
 See Tarver v. Quinn,
 
 149 La. 368, 377, 89 So. 216, 219-220 (1921).
 

 Regarding the enactment of LSA-C.C.P. art. 1151, the 1960 Official Revision Comments provide as follows:
 

 This article effects a change in the procedural law of Louisiana, but it provides a simple, workable rule as to amendments after the filing of answer within the discretion of the trial judge, as is provided under the federal practice and under all of the newer rules of civil
 
 *250
 
 procedure in other American jurisdictions.
 

 Probably the most unworkable rules contained in the 1870 Code of Practice are Arts. 419 and 420 relating to the amendment of the petition and answer. The concepts of |^“joinder of issue” and “altering the substance of the demand” are so nebulous and impractical as to make any rules dependent upon them wholly unworkable.... For these reasons, the above article leaves the decision to the discretion of the trial judge who is in the best position to determine the matter.
 

 Accordingly, because the concept of join-der of issue is no longer viable with regard to amendment of the petition, the determination of whether leave of court is needed for the filing of an amended petition focuses on whether the answer has been served. Because no answer was ever filed herein, we are constrained to conclude that plaintiffs were entitled to file the second supplemental and amended petition without leave of court. Accordingly, the trial court erred in denying plaintiffs leave to file the amended petition.
 

 CONCLUSION
 

 For the above and foregoing reasons, the portion of the February 25, 2008 judgment granting the motion for summary judgment filed by defendants Bedico Junction, L.L.C., Wayne Glascock, Don Ayres, and Harold Perrilloux and dismissing with prejudice plaintiffs’ claims against these defendants is affirmed.
 

 The portion of the February 25, 2008 judgment denying plaintiffs’ leave to file their Second Supplemental and Amended Petition is reversed. This matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
 

 Costs of this appeal are assessed against plaintiffs, East Tangipahoa Development Company, L.L.C. and Byard Edwards, Jr.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 [1]
 

 . The Ponchatoula Recreational District was to be placed in possession by fee simple title of the 32% undivided interest in the tract of land to be developed as the golf course.
 

 [2]
 

 . The Credit Deed and the Development Agreement were subsequently amended by the parties on March 6, 2000.
 

 [3]
 

 . The record establishes that Edwards had inherited the 527-acre tract at issue. Edwards thereafter transferred a 32% undivided interest in the property to the Pontachatoula Recreational District and the remaining 68% undivided interest to East Tangipahoa Development.
 

 [4]
 

 . While plaintiffs aver in this assignment of error that the trial court should have determined that the repurchase option was deemed satisfied, we note that all that was before the trial court was defendants' motion for summary judgment seeking dismissal of plaintiffs’ claims. Plaintiffs did not file a cross motion for summary judgment seeking a final ruling on their claims.