# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 14-82

**STATE OF LOUISIANA**

**VERSUS**

**RODNEY L. JOHNSON, SR.**

**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 165171-A
HONORABLE MARK A. JEANSONNE, JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, James T. Genovese, and John E. Conery, Judges.

**REVERSED; CONVICTION AND
SENTENCE VACATED.**

**Rodney M. Rabalais**
**Post Office Box 447**
**Marksville, Louisiana  71351**
**(318) 253-4622**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Rodney L. Johnson, Sr.

**Charles A. Riddle, III**
**District Attorney–Twelfth Judicial District**
**Norris J. Greenhouse**
**Assistant District Attorney**
**Post Office Box 1200**
**Marksville, Louisiana  71351-1200**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Rodney L. Johnson, Sr., appeals his conviction by a jury of the responsive verdict of attempted unauthorized use of withdrawal of collateral securities and his accompanying sentence. He alleges insufficiency of the evidence and trial court error in its instruction to the jury and in ordering $40,000.00 in restitution. For the following reasons, we reverse and vacate Defendant's conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

On February 5, 2003, Defendant and his then wife, Christina Johnson, doing business as Quality Tank Service, executed a Master Note in favor of the Simmesport State Bank (Bank). That note was modified and/or extended on several occasions over the years by various agreements between the parties. On July 11, 2007, a separate promissory note was executed, again in favor of the Bank. This promissory note was secured by a Commercial Security Agreement (CSA) of even date and contained the signatures of Defendant and Christina; however, Defendant did not personally sign either document. Christina signed both documents on her behalf d/b/a Quality Tank Service and on behalf of Defendant.[1] The CSA listed items of equipment as collateral for the note and listed Defendant's address as 123 Choupique Road in Plaucheville, Louisiana.

On December 9, 2009, Defendant individually[2] executed another CSA securing the February 5, 2003 Master Note, which was renewed annually. This

---

[1] Though Defendant did not sign the CSA himself, he did not object to the introduction of the July 11, 2007 CSA at trial or raise the issue on appeal. Therefore, we do not address this on appeal.

[2] According to the marital status declaration in the December 9, 2009 CSA, Defendant (at this time) was legally separated from Christina; hence, he appeared individually.

CSA included a lengthy list of equipment (approximately 105 items), prepared by Defendant as collateral and listed his same address as the July 11, 2007 CSA.[3]

Although Defendant repaid some of the money borrowed pursuant to the two CSAs, the obligations were not paid in full. Due to Defendant's delinquency, the Bank instituted two civil actions to collect and/or repossess Defendant's property given as collateral. The Bank was unable to recover several items of property given as collateral, including the Hero paint pot and the portable air compressor given as collateral pursuant to the July 11, 2007 CSA, or approximately 71 of the 105 items given as collateral pursuant to the December 9, 2009 CSA.

Steve Lacombe, President of the Bank, and Brandon Newsome, the Bank's collections officer, spoke to Defendant about the equipment. Defendant told them that he had sold some of the items. On June 29, 2011, they went with Defendant to look at the items Defendant still had and tagged and photographed them, using the list of collateral set out on the CSAs to identify the secured property.

When Mr. Newsome returned with Deputy Guillory of the Avoyelles Parish Sheriff's Department to physically seize the items at the Choupique Road address, they located only 29 of the 142 items listed on the two CSAs. They then went to another location owned by Jan Clark in Plaucheville and saw similar items, but they did not have permission to go on the property. After contacting Mr. Clark, they returned, but the items were no longer there. Additionally, when they returned to Defendant's residence on Choupique Road, the majority of the items they had tagged there were gone. Ultimately, the Bank was able to recover only about half of the secured items. The Bank sold the recovered items after the civil

---

[3]We note that neither of the CSAs introduced into evidence at trial was signed by a representative of the Bank. However, Defendant did not object to the introduction of either CSA at trial or raise the issue on appeal. Therefore, we do not address this issue on appeal.

cases were completed, but the sale did not generate sufficient funds to satisfy Defendant's indebtedness to the Bank. At that point, the Bank reported the matter to the Avoyelles Parish Sheriff's Department as a crime.

Defendant was charged with a violation of La.R.S. 14:201, entitled "Collateral securities, unauthorized use of withdrawal prohibited[,]" dealing with the unauthorized use of property placed by him as collateral with the Bank. On March 14, 2013, a jury convicted him of the lesser offense of attempted violation of La.R.S. 14:201. On August 22, 2013, the trial court sentenced Defendant to thirty-six months with the Department of Corrections, suspended, with forty-eight months of probation. The trial court also ordered restitution in the amount of $40,000.00 to be paid during the period of probation along with a fine of $100.00, costs of prosecution of $100.00, and court costs of $399.00. The amounts were ordered payable at the rate of $846.00 per month plus a $71.00 per month probation supervision fee for a monthly total of $917.00. The trial court stayed the sentence pending the outcome of this appeal and indicated that it would not oppose an early termination of probation upon payment of the restitution. Defendant has appealed his conviction and sentence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent relative to post-conviction relief which is rendered moot due to our reversal of Defendant's conviction.[4]

---

[4]The record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8.

## ASSIGNMENTS OF ERROR

Defendant presents the following assignments of error for our review:

1. The jury erred by convicting Johnson of attempting to violate [La.]R.S. 14:201.

2. The trial court erred by refusing to instruct the jury on the law.

3. The trial court erred in denying the motion for post verdict judgment of acquittal.

4. The trial judge erred in ordering restitution of $40,000.00.

***ASSIGNMENT OF ERROR NUMBER ONE*:**

Defendant alleges the jury erred by convicting him of attempting to violate La.R.S. 14:201 because he did not pledge collateral to the Bank and then withdraw it on a trust or other receipt. The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

Other than insuring the sufficiency evaluation standard of *Jackson*, the appellate court should defer to the rational credibility and evidentiary determinations of the jury. *State v. Lambert*, 97-64 (La.App. 3 Cir. 9/30/98), 720 So.2d 724. Our supreme court has stated:

> In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. ___, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

*State v. Strother*, 09-2357, p. 10 (La. 10/22/10), 49 So.3d 372, 378.

In the instant case, Defendant was convicted of attempted unauthorized use of withdrawal of collateral securities. The relevant criminal statutes are La.R.S. 14:201 and La.R.S. 14:27.

The pertinent parts of La.R.S. 14:201 state:

> No customer . . . of any bank . . . who is allowed to withdraw any collateral pledged by him . . . on a trust receipt or other form of receipt, shall:
>
> > (1) Use, sell, repledge, or otherwise dispose of the collateral so withdrawn, for any other purpose other than that of paying the indebtedness for the security of which the collateral was pledged. . . .
> >
> > . . . .
>
> Proof of any of the acts set forth in this Section shall be considered prima facie evidence of criminal intent.

The pertinent part of the attempt statute, La.R.S. 14:27(A), states:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the

5

offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

A defendant may be convicted of an attempt to commit a crime even when the evidence at trial shows the attempted or intended crime was actually committed. La.R.S. 14:27(C). "Attempt" is a responsive verdict to the charge of unauthorized use of collateral security. *State v. Ackal*, 290 So.2d 882 (La.1974).

Also pertinent is Louisiana Revised Statutes 1:59, titled "Definitions of mortgage, chattel mortgage and pledge to include security interests," which states:

> Whenever the context so requires, the terms "mortgage", "chattel mortgage", and "pledge" as used in the Louisiana Revised Statutes additionally mean and include the granting of a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.) or under the corresponding provisions of Article 9 of the Uniform Commercial Code as adopted in any other state, to the extent applicable. Whenever the context so requires, the terms "mortgage", "chattel mortgage" or "pledge" agreement further mean and include a security agreement subject to Chapter 9 of the Louisiana Commercial Laws or to the corresponding provisions of Article 9 of the Uniform Commercial Code as adopted in any other state, to the extent applicable.

Based on this statute, the term "any collateral pledged" in La.R.S. 14:201 could be interpreted to mean collateral on which a security interest has been granted, and a "'pledge' agreement" could be interpreted to include the CSA.

Mr. Lacombe testified that Defendant was a customer of the Bank for "some ten or twelve years at least" and had made "numerous" loans from the Bank. He explained that the CSA was "basically a mortgage which lists specific equipment . . . and . . . attaches to the Promissory Note or it is pledged to the Promissory Note." He further explained that the CSA granted the Bank a continuing security interest in the property listed in it to secure the payment and performance of the obligation described in the CSA. Mr. Lacombe also testified about the different types of mortgages, including lines of credit, security agreements, assignments,

and pledges. Although he testified the CSA was not a pledge, he explained it was "basically the same thing as a consumer type pledge agreement security agreement except that it is done for commercial purposes and by businesses." The Bank chose the CSA to secure Defendant's line of credit. The Bank's security interest began immediately upon Defendant's signature. Mr. Lacombe described a pledge of property as "you['re] offering it as collateral to the bank for money that you borrow[.]" The CSA itself states that Defendant grants a security interest in the listed collateral by signing it. Thus, the State argues that it sufficiently established that Defendant granted the Bank a security interest and thereby pledged collateral according to La.R.S. 1:59 by entering into the CSAs.

However, Defendant contends the term "collateral pledged" in La.R.S. 14:201 refers to the term "pledge" as defined in the Civil Code. Louisiana Civil Code Article 3133 defines "pledge" as "a contract by which one debtor gives something to his creditor as a security for his debt." Louisiana Civil Code Article 3152 states, "[i]t is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right."

Evidence at trial established that Defendant disposed of numerous items of the collateral. Mr. Lacombe testified the Bank did not recover the Hero paint pot or the portable air compressor given as collateral on July 11, 2007, or approximately 71 of the 105 items given as collateral on December 9, 2009. Detective Jeremiah Honea of the Avoyelles Parish Sheriff's Department testified that Mr. Newsom and Deputy Guillory located only 29 of 142 items listed on the paperwork to be seized at Defendant's property on Choupique Road. They went to

another location in Plaucheville and saw similar items, but they did not have permission to go on the property. After they contacted the property owner, they returned, but the items were no longer there. Additionally, when they returned to the Choupique Road residence, the items they had tagged there "were for the most part gone . . . a few small items [were] left but the majority of the larger items that they had tagged were gone."

On September 12, 2011, Detective Honea attempted to interview Defendant. After speaking with his attorney and learning of the investigation, Defendant declined to answer any questions. However, Defendant did tell Detective Honea "he knew what the investigation was about"; he said he had sold the items previously put up as collateral "because he was going under financially." The evidence at trial clearly established that Defendant used, sold, or otherwise disposed of the collateral.

For sufficiency of the evidence purposes, the essential elements of La.R.S. 14:201 require Defendant to be a customer of a bank, who was allowed to withdraw collateral pledged by him on a form of receipt, and who disposed of the collateral so withdrawn for a purpose other than paying the indebtedness secured by that collateral. In the instant case, a review of the evidence in the record clearly establishes that Defendant was a customer of the Bank, that he borrowed money from the Bank, that he entered into a CSA as security for that indebtedness, and that he was in default on his loan to the Bank. The evidence in the record also establishes that Defendant was allowed to use the items of collateral in the course of his business and that a number of the items listed in the CSA were never located and/or disposed of when the Bank filed suit to collect on Defendant's debt. Crucial to this case is the fact that the record is void of any evidence of delivery of any

8

collateral by Defendant to the Bank or any statutorily-required receipt given to Defendant by the Bank.

Notwithstanding La.R.S. 1:59, without delivery, there can be no pledge. La.Civ.Code art. 3152. There was no delivery in this case. However, the State argues that even if there was no delivery of the thing pledged, that La.R.S. 1:59 creates a valid pledge when there is the granting of a security interest and that a pledge is subsumed in that security agreement. Assuming arguendo that to be true, La.R.S. 14:201 still required the Bank to issue to Defendant "a trust receipt or other form of receipt" for collateral pledged by him which is allowed to be withdrawn. There is no such "receipt" in the record.

Under either scenario, the State has failed to meet its burden of proving the essential elements of La.R.S. 14:201. Louisiana Revised Statutes 14:201 requires a pledge of some sort. Under our civil law of pledge, there must be delivery, and there is no proof of any actual delivery of any of the items listed as collateral in the CSA. On the other hand, even applying La.R.S. 1:59 to satisfy the legal requirements of a pledge, La.R.S. 14:201 requires "a trust receipt or other form of receipt" when a customer (such as Defendant) is allowed by any bank "to withdraw any collateral pledged by him."

In the instant case, there is neither delivery nor any such receipt, or proof thereof, in the record of these proceedings. Therefore, the State has failed to prove beyond a reasonable doubt the essential elements of the crime of attempted unauthorized use of withdrawal of collateral securities; hence, Defendant's conviction and sentence must be reversed and vacated.

Had the State so desired to prosecute Defendant for the unauthorized use of withdrawal of collateral securities, it could have readily and easily prosecuted

Defendant under La.R.S. 14:72.4,[5] which addresses the disposal of encumbered property with fraudulent or malicious intent and does not require the mandates of a pledge. It did not do so.

## *ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, AND FOUR*:

Having found that the State failed to prove beyond a reasonable doubt the essential elements of attempted unauthorized use of withdrawal of collateral securities as required by La.R.S. 14:201 thereby warranting a reversal of Defendant's conviction and sentence therefor, these remaining assignments of error have been rendered moot.

## DISPOSITION

Defendant's conviction and sentence on attempted unauthorized use of withdrawal of collateral securities are reversed and vacated.

## **REVERSED; CONVICTION AND SENTENCE VACATED.**

---

[5]Louisiana Revised Statutes 72.4(A) provides:

> It is unlawful for any person, who having executed a security agreement under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9 through 101 et seq.) on movable property, to sell, assign, exchange, injure, destroy, conceal, or otherwise dispose of all or any part of the encumbered property with fraudulent or malicious intent to defeat the mortgage or security interest, or remove the encumbered property from the location designated in the security agreement, if any, or from the parish where it was located at the time of the granting of the security interest without written consent of the secured party, with fraudulent or malicious intent to defeat the security interest.

10